JOHN M. AND BARBARA G. MOORE, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3025-76.     Filed September 19, 1978.

---

*Lewis H. Mathis* and *Byron M. Eiseman, Jr.,* for the petitioners.

*Barry M. Bloom* and *Charles M. Billings,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of $2,757.23 in the petitioners' Federal income tax for 1972. Both parties have conceded certain adjustments. The issues remaining for decision are: (1) Whether, for Federal tax purposes, partners can agree to allocate retroactively partnership losses to a partner who was not a member of the partnership at the time such losses accrued; and (2) to what extent was a partnership loss incurred after the admission of a new partner.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, John M. Moore and Barbara G. Moore, husband and wife, resided at Little Rock, Ark., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1972 with the Southwest Regional Service Center, Austin, Tex. Mr. Moore will sometimes be referred to as the petitioner.

Skyline Mobile Home Park (Skyline) was a general partnership organized under the laws of the State of Texas. Prior to December 29, 1972, Sarah Leake and Sam A. Leake, mother and son, were the only partners in Skyline.

Landmark Park & Associates 71-2 (Landmark) was a limited partnership organized under the laws of the State of Arkansas. During 1972, the petitioner was a limited partner in Landmark and entitled to a 3.3898-percent interest in its profits and losses for 1972. Both Skyline and Landmark were engaged in the mobile home park business. They maintained their books and

records by use of the cash method of accounting, and their taxable years during 1972 were calendar years.

On December 23, 1972, Landmark, acting through David Kane, agreed to purchase and the Leakes agreed to sell a portion of their partnership interests in Skyline. In relevant part, the sale and purchase agreement (the agreement) provided:

1. *Sale of Partnership Interest*— Sellers agree to sell, transfer and assign all of their right, title and interest in and to a certain percentage of the general partnership known as Skyline Park and Buyer agrees to purchase an interest therein as follows:

(a) 45% of Sellers capital in the partnership; plus
(b) 49% of the Sellers interest in partnership profits; plus
(c) 100% of the Sellers interest in partnership losses.

2. *Purchase Price*—Buyer agrees to pay Sellers $22,239.53 upon execution of this agreement in full payment for the interest transferred to Buyer by Sellers in Paragraph 1 hereof.

On such date, David Kane also signed two other contracts which provided Landmark with exclusive options to purchase the remainder of the Leakes' partnership interests in Skyline. The first option provided in relevant part that the Leakes granted Landmark "the exclusive option to purchase 45 percent of our interest in the capital account of Skyline Park, Ltd., and 49 percent of our interest in the profits of Skyline Park, Ltd. for the sum of $22,239.53 to be payable in cash on the date of the exercise of this Option." Such option could be exercised between January 5 and January 10, 1974. The second option provided in relevant part that the Leakes granted Landmark "the exclusive option to purchase 10 percent of our interest in the capital account of Skyline Park, Ltd., and 2 percent of our interest in the profits of Skyline Park, Ltd. for the sum of $5,000 to be payable in cash on the date of the exercise of this Option." Such option could be exercised between January 12 and January 16, 1975.

On December 29, 1972, the agreement was consummated when Landmark paid the Leakes $21,373.53. In addition, several other transactions occurred on such date. Landmark issued a check in the amount of $65,000, payable to "Skyline Park Ltd." Such amount was deposited in Skyline's recently opened bank account in Worthen Bank & Trust Co., Little Rock, Ark. Landmark also purchased two nonnegotiable savings certificates. The first savings certificate matured on December 29, 1973, and was in the amount of $22,239.53. The second savings certificate

matured on December 29, 1974, and was in the amount of $5,000. The payees on both certificates were David Kane and Don Reed, the attorney who had represented the Leakes during their negotiations with Landmark. Subsequently, the savings certificates were endorsed by both payees and delivered to Sam Leake.

Prior to December 29, 1972, Skyline had incurred but not paid the following expenses:

| Item | Amount |
| --- | --- |
| Mortgage interest | $7,195.05 |
| Insurance | 6,090.49 |
| State taxes | 2,050.86 |
| City taxes | 4,114.00 |
| School district taxes | 8,102.29 |
| Total | 27,552.69 |

On its 1972 partnership return, Skyline reported an ordinary loss of $189,323.62. On the return, the deductions claimed by Skyline included: interest—$64,135.77, insurance—$6,960.86, and real estate taxes—$15,516.31. On its return, Skyline's entire ordinary loss for 1972 was allocated to Landmark, and Landmark included such amount in computing its ordinary loss of $235,470 for 1972. Because of his 3.3898-percent interest in Landmark's profits and losses, $7,982.03 of such loss was allocated to the petitioner as his distributive share of such loss.[1]

In his notice of deficiency, the Commissioner, inter alia, limited the petitioner's distributive share of Landmark's loss to $559.55 by disallowing certain deductions taken by Skyline and Landmark and by disallowing the portion of the petitioner's distributive share of Landmark's loss attributable to losses of Skyline which accrued prior to December 29, 1972. Subsequently, the parties agreed that Skyline incurred an ordinary loss of $149,323.62, and that if all of such loss was properly allocable to Landmark, then Landmark incurred an ordinary loss of $165,429.45 in 1972. They further agreed that at the minimum, Landmark was entitled to $818.21 of the loss incurred by Skyline.

---

[1]Although the petitioner deducted $7,982.03 as his distributive share of Landmark's loss, a 3.3898-percent interest in such amount equals $7,981.96.

## OPINION

At the outset, we must dispose of a preliminary contention by the Commissioner; he asserts that the Leakes merely intended to allocate to Landmark 100 percent of Skyline's losses accruing on or after December 29, 1972. The agreement between the Leakes and Landmark merely provided that Landmark purchase "100 percent of the Sellers interest in partnership losses." There is no substantial evidence supporting the Commissioner's limited view of such provision.

David Kane, who negotiated the agreement with the Leakes on behalf of Landmark, testified unequivocally that he intended to purchase 100 percent of the Leakes' interest in Skyline's losses for 1972. In addition, Sam Leake testified that he intended Landmark to acquire "whatever they wanted." Similarly, Don Reed indicated that it was his understanding that Landmark owned a 45-percent interest in Skyline's capital, a 49-percent interest in Skyline's profits, and a 100-percent interest in Skyline's losses for the calendar year ended December 31, 1972. Finally, all of Skyline's 1972 loss was actually allocated to Landmark on Skyline's 1972 partnership return and deducted by Landmark on its 1972 partnership return.

The Commissioner pointed to certain other testimony of Mr. Leake to support his contention, but it is clear that when he gave such testimony, Mr. Leake did not understand the question asked of him. Accordingly, we hold that the Leakes and Landmark intended their partnership agreement to allocate 100 percent of Skyline's 1972 loss to Landmark.[2]

Now we come to the principal issue in the case, that is, whether, for Federal tax purposes, a partnership agreement can be modified to allocate to a partner retroactively partnership losses which accrued prior to such partner's entry into the partnership.[3] The resolution of this issue requires a reasonable

---

[2]Since the parties assume that the agreement amounted to an amendment of Skyline's partnership agreement, we will make the same assumption.

[3]The Tax Reform Act of 1976, Pub. L. 94–455, sec. 213(c), (d), and (f), 90 Stat. 1547–1548, expressly prohibits the type of retroactive allocation at issue in this case. In the committee reports accompanying such Act, Congress did not venture an opinion as to whether such allocations were valid prior to 1976, but declared that the issue was uncertain. H. Rept. 94–658, 1976–3 C.B. (Vol. 2) 695, 814–816; S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 49, 133–135. Such uncertainty may have resulted from our unpublished opinion in *Rodman v. Commissioner*, T. C. Memo. 1973–277, in which a retroactive allocation of a loss to a new partner was approved. However, respected commentators are of the view that such allocations were not authorized. 1 A. Willis, Partnership Taxation, secs. 24.03, 24.05, and 24.07 (2d ed. 1976); A. Kalish & S. Rosow, "Partnerships, Tax Shelters and the Tax Reform Act of

reconciliation of the provisions of subchapter K (sec. 701 et seq.) of the Internal Revenue Code of 1954,[4] relating to partnerships and the taxation of partners.

A partnership for tax purposes is liberally defined by section 761(a) to include "a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not * * * a corporation or a trust or estate." A partner is defined as "a member of a partnership" (sec. 761(b)), and the liability for tax is imposed on "Persons carrying on business as partners" (sec. 701). "partnerships are entities for purposes of calculating and filing informational returns but * * * they are conduits through which the taxpaying obligation passes to the individual partners in accord with their distributive shares." *United States v. Basye*, 410 U.S. 441, 448 n. 8 (1973).

Section 702(a) contains the general rule that each partner must take into account in computing his income his distributive share of partnership income or loss. Section 704(a) states that "A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement." Under section 704(b)(2), an allocation of any item of income, gain, loss, deduction, or credit is not effective if the principal purpose of the allocation "is the avoidance or evasion of any tax imposed by this subtitle."[5] "Partnership agreement" is defined by section 761(c) to include:

any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement.

See generally H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 65–68, A221–A226, A257 (1954); S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 89–92, 376–386, 407 (1954); *Kresser v. Commissioner*, 54 T.C.

---

1976," 31 Tax Law. 755, 764–772 (1978); H. Koff & S. Hammer, "Retroactive Allocations: The Case Against Rodman," 2 J. Real Est. Tax. 18 (1974); C. Saunders, "Basis and Allocation Problems in Dealing with Limited Partnerships," 23 Tul. Tax Inst. 182, 224–236 (1974).

[4] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated.

[5] The Commissioner has decided not to rely on sec. 704(b) in the case now before us.

1621, 1628 (1970); *Foxman v. Commissioner*, 41 T.C. 535, 554–555 (1964), affd. 352 F.2d 466 (3d Cir. 1965).

Section 706(c) generally deals with the consequences to partners and to the partnership of changes in partnership membership during the taxable year. Section 706(c)(1) provides that a partnership taxable year shall not close as the result of the addition of a new partner, the death of a partner, or the liquidation or the sale or exchange of a partnership interest. H. Rept. 1337, *supra* at A225; S. Rept. 1622, *supra* at 386; sec. 1.706–1(c)(1), Income Tax Regs. Section 706(c)(2) deals with the tax consequences to partners whose partnership interests are affected by changes in partnership membership and provides as follows:

(2) PARTNER WHO RETIRES OR SELLS INTEREST IN PARTNERSHIP.—

(A) DISPOSITION OF ENTIRE INTEREST.—The taxable year of a partnership shall close—

(i) with respect to a partner who sells or exchanges his entire interest in a partnership, and

(ii) with respect to a partner whose interest is liquidated, except that the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year.

Such partner's distributive share of items described in section 702(a) for such year shall be determined, under regulations prescribed by the Secretary or his delegate, for the period ending with such sale, exchange, or liquidation.

(B) DISPOSITION OF LESS THAN ENTIRE INTEREST.—The taxable year of a partnership shall not close (other than at the end of a partnership's taxable year as determined under subsection (b)(1)) with respect to a partner who sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced, *but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the taxable year.* [Emphasis supplied.]

See sec. 1.706–1(c)(1), (2), (3), Income Tax Regs.

The petitioners maintain that sections 702(a), 704(a), and 761(c) reveal a legislative purpose to allow partners flexibility in determining inter se the incidents of their tax liability resulting from participation in a partnership. See H. Rept. 1337, *supra* at 65; S. Rept. 1622, *supra* at 89; *Kresser v. Commissioner*, 54 T.C. at 1630–1631. More particularly, they argue that partners are permitted to modify the partnership agreement at any time prior to the time for filing a return to shift income and losses among themselves as they see fit, that this principle is applicable irrespective of whether the modification allocates partnership

items to a person who was not a partner at the time such items accrued, and that such principle is paramount in determining their tax liability and allows them to alter the restrictions which might otherwise flow from section 706(c)(2). Though the petitioners have presented their argument very forcefully, we are not convinced that it represents a proper reconciliation of the provisions of subchapter K.

Under section 706(c)(2)(A), it is clear that if a partner disposes of his entire interest, the partnership year closes as to such partner at that moment, and he is required to include in his income his distributive share of section 702(a) items for the period he was a partner. The regulations also expressly provide that in such situation, the transferee partner is required to include in his income his distributive share of partnership items for the period during which he was a member of the partnership. Sec. 1.706–1(c)(2), Income Tax Regs.; Conf. Rept. 2543, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 60–61 (1954). The distributive shares for the transferor and the transferee, so determined, cannot be altered retroactively by a modification of the partnership agreement under section 761(c). *Rodman v. Commissioner*, 542 F.2d 845, 857 n. 16 (2d Cir. 1976), affg. on this issue a Memorandum Opinion of this Court. Thus, if Mr. Leake had transferred his entire interest to Landmark (rather than each of the Leakes transferring a partial interest to Landmark), it would be clear that Mr. Leake would be required to report his distributive share of Skyline's loss for the period preceding the transfer on December 29, 1972, and that such loss could not be transferred to Landmark by the agreement consummated on that date.

Where a partner sells or exchanges less than his entire interest, section 706(c)(2)(B) requires that the transferor partner determine his distributive share "by taking into account his varying interests in the partnership during the taxable year." Sec. 1.706–1(c)(4), Income Tax Regs. It follows that the transferee's distributive share must also be determined by taking into account his varying interests in the partnership. See generally H. Rept. 94–658, 1976–3 C.B. (Vol. 2) 695, 815–816; S. Rept. 94–938, 1976–3 C.B. (Vol. 3) 49, 96. Since a partner who transfers his entire interest is required to report his distributive share of partnership items for the period he was a partner *and cannot transfer retroactively those items to the transferee*, it is

reasonable to conclude that Congress intended for the transferor and transferee of a partial interest to determine the variation in their interests in the same manner. There is no reason to believe Congress intended to allow the transferor of a partial interest to assign his distributive share of partnership items occurring before the transfer and deny a similar privilege to the transferor of an entire interest. Consequently, we conclude that when there is a transfer of a partial partnership interest, section 706(c)(2)(B) requires the transferor to report his distributive share of partnership items for the period before the transfer, requires the transferor and transferee to report their distributive shares of partnership items for the period after the transfer, and prohibits the retroactive shifting of such interests.

Our interpretation of section 706(c)(2)(B) is confirmed by a consideration of the assignment-of-income doctrine. By now, it is axiomatic that income is taxable to him who earns it and that a loss is deductible only by him who suffers it. *United States v. Basye*, 410 U.S. at 447; *Commissioner v. Culbertson*, 337 U.S. 733, 739–740 (1949); *Interstate Transit Lines v. Commissioner*, 319 U.S. 590 (1943); *Helvering v. Horst*, 311 U.S. 112, 116 (1940); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435 (1934); *Lucas v. Earl*, 281 U.S. 111, 114–115 (1930); *Calvin v. United States*, 354 F.2d 202, 204 (10th Cir. 1965). Just as the assignor of income cannot escape taxation by an anticipatory assignment thereof, the transferee of losses can gain no tax advantage by the transfer thereof. These fundamental income tax principles have been described "as a cornerstone of our graduated income tax system" (*United States v. Basye, supra* at 450) and as "the first principle of income taxation" (*Commissioner v. Culbertson, supra* at 739). Such principles are applicable in determining whether a partnership exists and whether income is attributable to a partnership enterprise. *United States v. Basye, supra; Commissioner v. Culbertson, supra; Burnet v. Leininger*, 285 U.S. 136 (1932). Before the enactment of the provisions of subchapter K, there were some controversies over whether such principles applied to allocations of partnership income and losses among the partners. See, e.g., *Hartz v. Commissioner*, 170 F.2d 313 (8th Cir. 1948), revg. a Memorandum Opinion of this Court, cert. denied 337 U.S. 959 (1949); *Woosley v. Commissioner*, 168 F.2d 330 (6th Cir. 1948), revg. a Memorandum Opinion of this Court; *Hellman v. United States*, 44 F.2d 83 (Ct. Cl. 1930);

*Delchamps v. Commissioner*, 13 T.C. 281 (1949). By the enactment of sections 702(a), 704(a), and 761(c), Congress made clear that with respect to the income and losses resulting from the operation of the partnership, the partners have broad discretion in allocating such items among themselves. See H. Rept. 1337, *supra* at 65; S. Rept. 1622, *supra* at 89; *Kresser v. Commissioner*, 54 T.C. at 1630–1631. Yet, there is nothing in such provisions indicating a congressional intent to extend such discretion to purported retroactive assignments to new partners of partnership items arising prior to their entry into the partnership.

Here, the partners in Skyline from January 1, 1972, to December 29, 1972, were Sam and Sarah Leake. Any income earned or loss suffered by the partnership attributable to such period could be passed through to the Leakes at the end of Skyline's taxable year in any proportion chosen by the Leakes under sections 702(a), 704(a), and 761(c), provided the allocation could withstand any attack under section 704(b). See *Smith v. Commissioner*, 331 F.2d 298, 301 (7th Cir. 1964), affg. a Memorandum Opinion of this Court; *Foxman v. Commissioner*, 41 T.C. at 554. The partners in Skyline from December 29, 1972, through December 31, 1972, were the Leakes and Landmark. Similarly, any loss or income attributable to such period could be passed through to the Leakes and Landmark at the end of Skyline's taxable year in the manner agreed upon by them. For each of such periods, the incidents of taxation arising from carrying on a business as a partnership are passed through to persons who were partners at the time such incidents arose.

The same observation cannot be made with respect to the retroactive allocation sought by the petitioners. Landmark was not a member of the partnership when Skyline incurred the loss attributable to January 1, 1972, through December 28, 1972. Landmark was not liable for such loss, and the burden thereof was not retroactively shifted to Landmark by the December 29, 1972, agreement. The entity incurring the loss was Skyline, and any attempt to transfer such loss to persons who were not members of the partnership during such period violates the assignment-of-income doctrine. As stated by the Supreme Court in *New Colonial Ice Co. v. Helvering*, 292 U.S. at 440–441:

the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to

others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed. And as the section contains nothing which even approaches such an expression, it must be taken as not intended to make such a departure.

The same observations are pertinent in the case now before us. Subchapter K contains no clear expression of the intention to permit a partner to deduct losses which accrued prior to his entry into the partnership. To the contrary, the opposite intent is expressed in section 706(c).

Our conclusions are also supported by the decision of the Second Circuit in *Rodman v. Commissioner*, 542 F.2d 845 (1976). In that case, a calendar-year partnership had four equal partners. On November 2, 1956, one of the partners withdrew from the partnership by selling his interest ratably to the three remaining partners, who, from November 2 to November 5, 1956, each owned a 33⅓ percent interest in the partnership. On November 5, 1956, a new partner was admitted to the partnership, and from November 5 to December 31, 1956, the partnership interests were owned: by the old partners—33⅓ percent, 22⅔ percent, and 22 percent, and by the new partner—22 percent. On its 1956 partnership return, the partnership reported a loss and allocated a full 22 percent of such loss to the new partner, who included such loss on his tax return. Subsequently, the Commissioner disallowed some of the deductions which comprised the partnership loss for 1956. In particular, a $900,000 adjustment to the cost of goods sold caused the partnership to have income for 1956, and the Commissioner allocated 22 percent of such income to the new partner. However, the new partner disputed the allocation, arguing that his interest in partnership income was *intended* to be prospective only. The Commissioner, on the other hand, argued that the partnership *intended* the allocation of income or loss to be for the entire year, and he pointed to the treatment of the loss on the partnership return and on the new partner's individual tax return to support his contention. No consideration was given as to whether a retroactive allocation of partnership income or loss to the new partner was legally permissible under these facts. In an unpublished opinion, this Court sustained the Commissioner's adjustment to inventory, held that the intention of the partners controlled, and approved the retroactive allocation of income. *Rodman v. Commissioner*, T. C. Memo. 1973–277.

On appeal, the Commissioner and the new partner agreed that the Tax Court erred in permitting a retroactive allocation of pre-November 5, 1956, partnership income to the new partner, and the Court of Appeals for the Second Circuit agreed. The Second Circuit found that the attempted retroactive assignment of income was contrary to the express provisions of section 706(c)(2)(B). It was also of the view that although the provisions of subchapter K confer broad latitude on the partners to allocate partnership income among themselves, the statute does not extend to attempted assignments of preadmission income to new partners, and that such assignments continue to be subject to the assignment-of-income doctrine. The Second Circuit recognized that in *Smith v. Commissioner, supra,* the Seventh Circuit approved a retroactive allocation of income between members of an "ongoing" partnership, but it distinguished that case on the ground that *Rodman* involved an attempted assignment of preadmission income to a new partner.

Finally, we must decide how much of Skyline's loss can be passed through to Landmark. Conceptually, there are several different methods of making such determination: One method involves an interim closing of the partnership books as of the date of the transfer of the partial partnership interest and computing the various items of partnership income and loss as of such date. Another method involves computing partnership income or loss at the end of the partnership year and allocating the yearend totals ratably over the year. See sec. 1.706-1(c)(2), Income Tax Regs. In his statutory notice of deficiency, the Commissioner used the latter method. On brief, the Commissioner argues that there is no evidence to support a different method of computing the loss. The petitioner, on the other hand, argues for an interim closing of the partnership year. It is the petitioner's contention that $27,552.69 of Skyline's loss is based on payments made during the last 3 days of 1972 and that therefore such amount should be passed through to Landmark. In view of our conclusion, we need not decide whether he would be entitled to a loss based on payment, during such period, of liabilities incurred prior to Landmark's entry into the partnership.

In the first place, it is not altogether clear that the payments at issue were in fact made during the last 3 days of 1972. The petitioner relied upon the parties' stipulation that Skyline

incurred an ordinary loss of $149,323.62 in 1972, and that in computing such loss, Skyline claimed deductions of $15,516.31 for real estate taxes, $6,960.86 for insurance, and $64,135.77 for interest. He urges us to infer that such deductions included a mortgage interest expense of $7,195.05, an insurance expense of $6,090.49, and a tax expense of $14,267.15, and that such amounts were in fact paid in 1972. He also pointed to the Skyline bank statement for January 1973, showing that canceled checks for $7,195.05 and $6,090.49 cleared such account on January 5, 1973. However, such evidence is not sufficient. From the fact that deductions were claimed for taxes, insurance, and interest, we are not justified in concluding that such amounts were in fact paid in 1972, nor are we justified in concluding that the larger amounts included the particular payments at issue. We were given no evidence as to the time required for checks to clear at that time, and we had no supporting evidence with respect to the payment of taxes.

Moreover, if the petitioner wishes to compute his distributive share of partnership income or loss through an interim closing of the partnership books on the date of the transfer, he must show, not only the expenses which are deductible by the partnership during the short period, but must also show what receipts, if any, the partnership had during such short period. Without information as to the receipts of the partnership during the short period, we are totally unable to determine what loss was sustained during such period. Accordingly, the petitioners have failed to carry their burden of showing that the Commissioner's determination in this respect was incorrect (see *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure), and therefore, we sustain the Commissioner's method of computing the amount of loss allowable for the short period.[6]

*Decision will be entered under Rule 155.*

Reviewed by the Court.

---

[6]Though we sustain the Commissioner's method, he overlooked the fact that 1972 was a leap year, so that the allowable loss should be 3/366ths of the loss for the entire year.

SCOTT, *J.*, concurring: I agree with the majority that it is reasonable to conclude that: "Since a partner who transfers his entire interest is required to report his distributive share of partnership items for the period he was a partner *and cannot transfer retroactively those items to the transferee*, it is reasonable to conclude that Congress intended for the transferor and transferee of a partial interest to determine the variation in their interests in the same manner." I therefore agree with the result reached by the majority.

However, in my view the transfer of a part of a partnership interest to a new partner prior to the close of the partnership taxable year is not any more an anticipatory assignment of income than is the transfer of such an interest by reallocation of the percentage interests among the existing partners. The latter is permitted by statute. Until the year is closed, there is no income of the partnership on an annual accounting basis as distinguished from specific items of receipts and deductions which go into the computation of income. I would limit my reasons for reaching the conclusion the majority reaches to the construction of the statutory provisions.

STERRETT AND HALL, *JJ.*, agree with this concurring opinion.