LOUIS R. GOMBERG and SUZANNE S. GOMBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gomberg v. Commissioner
Docket No. 14277-78.
United States Tax Court
T.C. Memo 1980-58; 1980 Tax Ct. Memo LEXIS 527; 39 T.C.M. (CCH) 1147; T.C.M. (RIA) 80058; February 29, 1980, Filed Louis R. Gomberg, pro se. William Saul, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency in income tax due from the petitioners for the taxable year 1972 in the amount of $13,891.00. The sole question for decision is whether a partnership known as STD I, LTD. sustained a loss for the calendar year 1972 and, if so, whether the amount thereof is deductible by petitioners in their individual income tax return for that year. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Louis R. Gomberg and Suzanne *528 S. Gomberg are husband and wife. At the time of their filing of the petition in this case, they resided in Tiburon, California. Petitioners filed their joint income tax return for 1972 with the Director, Internal Revenue Service Center, Fresno, California.
In said return, petitioners deducted the sum of $26,625 as their part of a loss allegedly incurred by a partnership known as "STD I, LTD." As of December 15, 1972, an agreement of limited partnership under the title of South Tahoe Development, Ltd. (hereinafter STD, LTD.) was entered into by AIR/Industrial Research, Inc. (hereinafter AIR), as a general partner and David A. Salzberg and Karl Treffinger as limited partners, for the development of certain property in the Lake Tahoe area. With respect to AIR as general partner, said agreement provided in part as follows: General Partner. The General Partner of the Partnership shall be AIR/Industrial Research, Inc. The initial capital contribution of the General Partner shall be a minimum of $74,000 no later than December 31, 1972. The $74,000 will be disbursed, $50,000 for certain engineering, etc. and $24,000 in prepaid interest, the details of which are hereinafter *529 set forth in detail. The General Partner shall have a 50% interest in the net profits of the Partnership. The General Partner shall receive back all capital contributions before the distribution of any profits. The General Partner shall have the right to sell any or all of its 50% interest to investors who will advance funds to the General Partner for contribution to the Partnership. The General Partner shall hold the investor's interest in the Partnership as their nominee.
With respect to David L. Salzberg, as a limited partner, said agreement provided in part as follows: a) DAVID A. SALZBERG who shall have a 25% interest in the Partnership. Salzberg is the owner of the subject property - 33 plus acres - and concurrent with the execution of the document has agreed to sell the subject land to the Partnership on the following terms and conditions: Front 13 acres for $400,000 payable with interest at 6% per annum starting December 15, 1972 prepaid annually one year in advance, payable on or before December 31, 1972 and December 31, 1973, with principal due in full on December 31, 1974. Upon payment of $114,000 to Salzberg the remaining balance of the note ($286,000) *530 will be subordinated to construction loans in one to three acre increments with full release given upon payment of $1,450 per motel unit and townhouse with a minimum of $30,000 for each acre released. The sum of $25,000 shall be payable to Salzberg by December 31, 1972 or sooner for the engineering work paid for by Salzberg and which is usable to the project as determined by Karl Treffinger. With respect to Karl Treffinger, as a limited partner, said agreement provided in part as follows: b) KARL TREFFINGER shall have a 25% interest in the Partnership. Treffinger is an architect and agrees to have his associates design and supervise the project. To finance the work to be performed by Treffinger, the agreement further provided: Treffinger may draw from STD, LTD. a maximum or poured blood and ashes on the walls and ceiling of the actual costs incurred in connection with the following: * * * Following which this paragraph of the agreement set forth the type of work for which said $50,000 might be expended, and concluded: If for any reason beyond the control of the parties hereto the project is aborted or delayed more than one year, Treffinger will not be responsible for *531 refunding any draws against the Fifty Thousand ($50,000) Dollars allocated to it. Under the title "Sharing of Profits and Losses", the agreement provided that the net profits shall be shared in proportion to the partnership interests. There were no specific provisions for the sharing of losses. Such provision apparently was unnecessary since the limited partners neither contributed any funds to the partnership nor assumed any liability for losses of the partnership. On December 29, 1972, an agreement of limited partnership known as "STD I, LTD." was filed in Santa Clara County, California, with AIR as general partner. The partnership acquired a 12-1/2 percent interest from AIR in the partnership known as "STD, LTD." Initially, the limited partners of STD I, LTD. were as follows: Initial Capital
Partnership
Limited Partner
Contribution
Interest
Collete, Charles
$10,000.00
1 Unit
Elmer
Resetar, Anthony L.
$20,000.00
2 Units
Silva, Stanley J.
$20,000.00
2 Units
Miller Management *
Service, inc.
(Nominee)
$50,000.00
5 Units
Subsequent *532 to the filing of the limited partnership agreement, Victor H. and Nina Grinich acquired one of the units of STD I, LTD. from Miller Management Services on December 29, 1972. On December 31, 1972, petitioner Louis R. Gomberg acquired his two units of STD I, LTD. from Miller Management Services for the sum of $20,000. As of December 31, 1972, eight of the ten units of STD I, LTD. were held by individuals and the other two of the ten units were held by Miller Management Services, Inc.
Pursuant to the partnership agreement of STD I, LTD. the limited partners were to receive all net profit and loss from the partnership on a per unit basis. Petitioners' two units in STD I, LTD. entitled them to one-fifth of the losses of STD I, LTD. Its sole asset was a 12-1/2 percent or one-eighth interest in STD, LTD.
As of December 15, 1972, AIR, acting for STD, LTD., purported to acquire the 13 acres of the land to be developed from David A. Salzberg for $400,000.00. A promissory note dated December 15, 1972, for $400,000.00 was given to Mr. Salzberg by the general partner of STD, LTD. in payment of the purchase price. The note provided for the prepayment of interest at the rate of 6 percent *533 a year for a period of up to one year. The note did not provide for the payment of any "points." The checkbook record of STD I, LTD. shows the following checks were issued during 1972: Check No.
Date
Amount
Payee
1
12/29/72
$ 20,000.00
APPI *
2 12/29/72
24,000.00
David A. Salzberg
3 12/29/72
50,000.00
David A. Salzberg
4
12/29/72
12.500.00
Karl Treffinger
TOTAL
$106.500.00
The total of $106,500 represented by these checks was reported by STD I, LTD. as a partnership loss for the calendar year 1972, constituting the basis upon which petitioners claimed a deduction of $26,625 as their share of such loss in their return for that year. There are no records of STD I, LTD. which would identify the purpose for which the checks reflected in the check record on December 29, 1972, were issued. Respondent acknowledges that the check in the amount of $24,000 payable to David A. Salzberg was probably a prepayment of interest for the period from December 16, 1972, to December 15, 1973. Except for this limited concession by the respondent, petitioners have failed to establish that *534 any of the checks were issued for an expense, obligation or liability of STD, LTD. or STD I, LTD. which would be deductible as a partnership loss for the taxable year 1972. [1]
OPINION On December 31, 1972, petitioners acquired for $20,000 two units (2/10ths) interest in STD I, LTD., a limited partnership which in turn had a 12.5 percent (1/8th) interest in STD, LTD., also a limited partnership. The latter was to develop certain property in the Lake Tahoe area. The sellers of these interests represented that petitioners would be entitled to deduct for the calendar year 1972 the sum of $12,500 for each $10,000 invested. Prior to December 29, 1972, neither STD, LTD. nor STD I, LTD. had directly paid or incurred any expenses which might be deductible for the taxable year 1972.Accordingly, it became necessary to "make a record" in order to *535 justify any deduction during that taxable year. On December 29, 1972, STD I, LTD. purportedly issued checks totaling $106,500 for unidentified purposes relating to STD, LTD.STD I, LTD. treated said amount as a partnership loss deductible for the taxable year 1972 and petitioners were advised that $26,625, or 1/4th thereof, should be deducted by them in their individual income tax return for the taxable year 1972. In arriving at the amount to be deducted, the fact that STD I, LTD. had only a 12.5 percent interest in STD, LTD. and that the petitioners had only 2/10ths interest in STD I, LTD. was not taken into account. With respect to STD I, LTD., presumably the remaining two units held for sale by Miller Management Services, Inc., were disregarded. We must first determine the correct percentage of the partnership losses deductible by petitioner in the taxable year 1972. Applying section 706(c)(2), [2] respondent's brief states: STD and STD I were on the calendar year period for reporting their income. They began their year ending December 31, 1972, on December 15, 1972, and *536 December 29, 1972, respectively. STD thus had a taxable year of seventeen days for the first year of its existence. Petitioners' entrance into STD I on December 31, 1972, thus entitles them to one-fortieth of one seventeen [sic] of whatever losses are determined to be deductible by STD or approximately.147% of STD's allowable losses. (STD I was a member of STD for 3/17 of STD's existence, and petitioners were members of STD I for 1/3 of its existence, of 1/17 of STD's existence.) Petitioners' transferors would be entitled to the remaining share of the losses. In this respect, respondent is supported by our decision in Moore v. Commissioner,70 T.C. 1024 (1978). Further applying Rev. Rul. 68-643, 1968-2 C.B. 76, respondent has also determined that STD, LTD. is only entitled to deduct 16/365ths of the interest paid during the taxable year 1972. As respondent points out, there were no activities on behalf of either partnership, except for the sale of units, in the taxable year 1972. The entire effort was directed towards setting up a "paper loss" for the year 1972 which might be passed on to the petitioners and the other limited partners of STD *537 I, LTD. To permit the deduction in the calendar year 1972 of prepaid interest in the amount of $24,000 would result in a distortion of income. STD I, LTD. is only entitled to deduct 16/365ths of the interest paid during the taxable year 1972. Sandor v. Commissioner,62 T.C. 469 (1974), affd. 536 F.2d 874 (9th Cir. 1976). As a result, respondent would limit petitioners' deduction to 1/680th of the interest paid for the taxable year 1972. We agree with respondent. On the assumption that prepaid interest of $24,000 was in fact paid by or on behalf of STD, LTD. during the year 1972, the Court finds no fault with the respondent's computation of the amount allocable to petitioners. However, in view of the respondent's concession that the petitioners are entitled to deduct their proportionate share (1/680th) of the interest payment allocable to the calendar year 1972 (16/365ths), it will be necessary to recompute the amount of deficiency.
Decision will be entered under Rule 155.
Footnotes
*. Miller Management Service, Inc., was ostensibly sales agent for the limited partnership interests.↩
*. Air Park Properties, Inc., under common control with AIR.↩
1. For example, on direct examination by Mr. Gomberg, Karl Treffinger testified as follows: MR. GOMBERG: Is the figure $12,500.00 as shown on the books and records of AIR, for payment made to you in 1972? Do you recall, is that correct? A: I don't believe it is. My books don't show that.Q. Your books don't show that" A. No.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩