**Robert M. SNELL and Rosalie J. Snell, husband and wife, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 81–2025.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1982.

Decided June 18, 1982.

John P. Raynor, Omaha, Neb., for appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Stephen Gray, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and HARRIS,* Senior District Judge.

McMILLIAN, Circuit Judge.

Robert M. Snell and Rosalie J. Snell, husband and wife, appeal an order entered in the District Court[1] for the District of Nebraska granting the government's motion for summary judgment in the Snells' tax refund suit based on the district court's finding that a taxpayer is not entitled to, as a deduction, partnership losses which had accrued prior to the taxpayer's entry into the partnership. For reversal the Snells argue that summary judgment was inappropriate because such retroactive allocations are not unallowable as a matter of law, but rather, they are unallowable only when the government proves that entry into the partnership was a sham or for tax avoidance. After a careful examination of the law and the record, we reject the Snells' contentions as contrary to law. Accordingly, we affirm.

The facts are not in dispute. In late December 1975, Robert Snell acquired a 49 percent interest in a Nebraska partnership in exchange for a contribution of $375,000. This acquisition reduced the interest of each of the original partners from 33⅓ percent to 17 percent. At that time the original partners and Snell entered into an Amendment and Restatement of Partnership under which Snell was accorded 90 percent of the partnership's profits or losses for the taxable year ending December 31, 1975, and prospectively for the taxable years 1976, 1977 and 1978. For the taxable year 1979 and thereafter, Snell was to receive 49 percent of the partnership's profits or losses.

On its federal income tax return for 1975, the partnership reported a loss of $442,408. The Snells claimed 90 percent of this loss and carried it back to the years 1972, 1973 and 1974 and received a refund of all taxes paid for those years. Thereafter, the Internal Revenue Service (IRS) audited the 1975 partnership return and determined that the partnership's net operating loss was less than $442,408, and that the Snells were only entitled to report 49 percent of the partnership's loss, rather than 90 percent. In accordance with these determinations, tax de-

---

* The Honorable Oren Harris, United States Senior District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

ficiencies were assessed by the IRS and paid by the Snells. The Snells then initiated the present action to recover the amounts paid. The government moved for summary judgment.

The district court granted the government's motion based on its findings that a retroactive allocation to a newly admitted partner was prohibited under § 706(c)(2) of the Internal Revenue Code (the Code), relating to the taxation of partners and partnerships, and also by the allocation of income doctrine. *Snell v. United States*, No. CV 80–L–57 (D.Neb. Sept. 14, 1981), slip op. at 2–3. The court noted that this was the same result reached by all the courts which have decided the issue, *citing Rodman v. Commissioner*, 542 F.2d 845, 858 (2d Cir. 1976); *Marriott v. Commissioner*, 73 T.C. 1129 (1980); *Moore v. Commissioner*, 70 T.C. 1024 (1978).

When reviewing the district court's entry of summary judgment, this court applies the same standard as the district court. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716 (1973). Under Fed.R. Civ.P. 56(c), the motion for summary judgment should be sustained "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ This circuit has repeatedly emphasized the drastic nature of the summary judgment remedy. It should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy. *See Jackson v. Star Sprinkler Corp.*, 575 F.2d 1223, 1226 (8th Cir. 1978); *New England Mutual Life Insurance Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541

F.2d 207, 209 (8th Cir. 1976). The moving party must overcome a heavy burden and the evidence is viewed in the light most favorable to the nonmoving party. The court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the facts. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Jackson v. Star Sprinkler Corp.*, 575 F.2d at 1126. "However, this Circuit recognizes the remedy's salutory purpose of avoiding useless and time consuming trials." *Butler v. MFA Life Insurance Co.*, 591 F.2d 448, 451 (8th Cir. 1979), *citing Percival v. General Motors Corp.*, 539 F.2d 1126, 1129 (8th Cir. 1976); *Lyons v. Board of Education*, 523 F.2d 340, 347 (8th Cir. 1975).

In the present case the district court relied on the Code provisions governing the taxation of partners and partnerships. Specifically, it found that § 706(c)(2)(B) [2] was applicable and that it precluded retroactive allocation of partnership losses or profits to newly admitted partners. That section provides that when a partner's interest is "reduced" during the taxable year, the partnership's tax year is not interrupted, but the individual partner must take this reduction into account in calculating his share of partnership items listed in § 702(a) of the Code, which includes profits or losses.

The district court reasoned that the entry of a new partner caused the original partners to have a reduced interest within the meaning of § 706(c)(2)(B). The district court further reasoned that because the statute would bar the original partners from sharing disproportionately in the partnership's losses or profits after the entry of the new partner, the statute would similarly bar the new partner from sharing disproportionately in profits or losses which accrued prior to his entry.

2. Section 706(c)(2)(B) provides:

(B) *Disposition of less than entire interest.* The taxable year of a partnership shall not close . . . with respect to a partner who sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced, but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the year.

■ On appeal the Snells argue that § 706(c)(2)(B) is inapplicable because the term "reduce" only refers to reductions resulting from the sale, exchange or liquidation of a partner's interest and does not encompass entry of a new partner. Therefore, the Snells reason, there is no requirement that there be any adjustment made in the partners' shares of losses or profits due to their varying interests. In support of this argument the Snells reason that the values of the original partners' shares were not reduced because of the Snells' capital contribution. We conclude that this argument has no merit.

Section 706(c)(2)(B) of the Code refers to a reduction in interest rather than a reduction in value. It is undisputed that each original partner's interest was reduced from 33⅓ percent to 17 percent. In addition, § 706(c),[3] which sets forth the general rule as to the consequences of a change in partnership membership during the taxable year, refers not only to the sale, exchange or liquidation of a partner's interest but also to "the entry of a new partner." Reading § 706(c) in its entirety, as it should be read, we affirm the district court's finding that the term "reduced" in § 706(c)(2)(B) applies to the admission of new partners in exchange for a contribution to capital. *See Rodman v. Commissioner*, 542 F.2d at 858 (§ 706(c)(2)(B) applies to the admission of new partners as well as to the transfer by a partner of a partnership interest).

The Snells next argue that even if § 706(c)(2)(B) is applicable, it is overridden by the mandate in § 704(a) that a partner's distributive share of the partnership's income or loss is to be determined by the partnership agreement. The Snells reason that because § 706(c)(2)(B) is not part of § 704(a), it is operative only when the partners do not have a partnership agreement which provides for the distribution of the partnership's income and loss.

■ The district court properly rejected this argument on the basis that § 706(c)(2)(B) is also mandatory, and its language is not limited to situations in which there is no partnership agreement to control the determination of a partner's distributive share. The district court noted that the same argument had been considered and rejected in *Rodman v. Commissioner*, 542 F.2d 845; *Marriott v. Commissioner*, 73 T.C. 1129, and *Moore v. Commissioner*, 70 T.C. 1024. The Snells have not cited any authority in support of their argument on appeal and we conclude that it has no merit.

As a second, independent ground for its decision the district court held that the assignment of income doctrine bars the allocation of pre-entry profits or losses to a new partner even if the Code is silent on this point.

On appeal the Snells argue that the doctrine has no relevance to allocations among partners because Congress intended partners to have flexibility in their profit or loss allocations as evidenced by § 761 of the Code, which gives current partners the right to adjust their respective allocations.

■ The district court properly rejected this argument, reasoning that § 761 did not apply to newly admitted partners because it is subject to the tax avoidance caveat of § 704(b).

■ We agree with the district court. Section 761 does give current partners the right to adjust their respective allocations to accurately reflect the fruitfulness, or lack thereof, of each partner's contribution of capital or services to the partnership. In that case the current partners have sustained profit or loss during the taxable year and all that remains is to determine the amount each will bear. Section 761 permits a change in this determination from that provided in the partnership agreement.

---

**3.** Section 706(c) provides:

(c) *Closing of partnership year.*

(1) *General rule*

Except in the case of a termination of a partnership . . . the taxable year of a partner-

ship shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership.

However, the allocations may not be used as a vehicle to escape tax liability. § 704(b)(2); *Smith v. Commissioner*, 331 F.2d 298, 301 (7th Cir. 1964). Therefore, § 761 has no relevance to an allocation of profit or loss to an individual who was not even a member of the partnership when that loss or profit was sustained.

We have considered the Snells' other arguments and conclude that they have no merit.

Accordingly, the judgment of the district court is affirmed.