KENNETH E. LIPKE AND PATRICIA LIPKE, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12898–80, 13981–82—13984–82.    Filed October 5, 1983.

*Donald J. Holzman*, for the petitioners.
*Louis John Zeller, Jr.*, for the respondent.

[1]Cases of the following petitioners are consolidated herewith: James H. Williams and Diane Williams, docket No. 13981–82; Lawrence Reger and Bernice Reger, docket No. 13982–82; Francis M. Williams and Marie K. Williams, docket No. 13983–82; and Clarence Rautenstrauch and Jennie Rautenstrauch, docket No. 13984–82.

OPINION

FAY, *Judge*: Respondent determined deficiencies in petitioners' Federal income tax as follows:

|  | Docket No. | Year | Deficiency |
|---|---|---|---|
| Kenneth E. Lipke and Patricia Lipke | 12898-80 | 1976 | $16,032 |
| James H. Williams and Diane Williams | 13981-82 | 1972 | 7,820 |
|  |  | 1973 | 630 |
|  |  | 1975 | 69,175 |
|  |  | 1976 | 21,286 |
| Lawrence Reger and Bernice Reger | 13982-82 | 1975 | 89,303 |
|  |  | 1976 | 25,113 |
| Francis M. Williams and Marie K. Williams | 13983-82 | 1972 | 2,581 |
|  |  | 1973 | 9,493 |
|  |  | 1975 | 53,708 |
|  |  | 1976 | 25,924 |
| Clarence Rautenstrauch and Jennie Rautenstrauch | 13984-82 | 1975 | 1,873 |
|  |  | 1976 | 11 |

These cases have been consolidated for purposes of trial, briefing, and opinion. After concessions, the issues are (1) whether a certain partnership's retroactive reallocation of losses in 1975 to both new and existing partners was allowable under the "varying interest" rules of section 706(c)(2)(B),[2] and if not, (2) whether that partnership is now entitled to use the "year-end totals" method of accounting in order to allocate its 1975 losses ratably over the year.[3]

The facts have been fully stipulated and are so found.

Petitioners Clarence Rautenstrauch and Jennie Rautenstrauch resided in Florida when they filed their petition herein. All other petitioners resided in New York when they filed their petitions herein.[4]

_____

[2] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[3] Although 1976 is the only taxable year at issue in docket No. 12898–80, and the parties have stipulated the method of allocating losses among the partners for that year, the determination of the amount of that loss depends upon the resolution of the issues herein.

[4] The term "petitioners" as used hereafter does not refer to those petitioners who are parties herein solely by virture of having filed joint returns.

In 1972, petitioner Lawrence Reger (Reger), petitioner Clarence Rautenstrauch (Rautenstrauch), and Herbert M. Luksch (Luksch), formed Marc Equity Partners I, a limited partnership. The partnership was organized for the purpose of acquiring and operating apartment buildings in the suburbs of Buffalo, N.Y. Reger, Rautenstrauch, and Luksch were the general partners, and Luksch was also the initial limited partner. The general partners made a capital contribution in the total amount of $100. Shortly after formation of the partnership, limited partnership interests were sold to 14 investors for a total amount of $1,175,000, and Luksch's interest as a limited partner was liquidated. With one exception, the partnership agreement allocated all profits and losses to the limited partners.[5] At all relevant times, the partnership computed its taxable income on a calendar year basis using the accrual method of accounting.

In 1972 and 1973, the partnership acquired several apartment buildings. At all relevant times, these apartment buildings were subject to mortgages. In 1974 and 1975, the partnership experienced severe financial problems and defaulted on the mortgages. After the mortgagee foreclosed on one of the apartment buildings, the partnership obtained additional capital of $300,000 in order to avoid losing its remaining apartment buildings. Of the $300,000, $84,000 was contributed by 6 of the 14 original limited partners who together held interests in the partnership totaling 28 percent. The remaining $216,000 was contributed by petitioners James H. Williams (James), Francis M. Williams (Francis), Kenneth E. Lipke (Lipke) (herein sometimes collectively referred to as the new partners), and Reger (one of the general partners), in return for new limited partnership interests. All of these capital contributions were made on October 1, 1975. Also effective October 1, 1975, one of the original limited partners (herein the withdrawing partner) sold his entire limited partnership interest to several of the other original limited partners.

---

[5]The partnership agreement allocated a residual interest in gains arising from "major capital events" to the general partners. In essence, a "major capital event" was defined as any transaction not in the ordinary course of business, such as the sale of real or personal property, condemnations, recovery of damages, etc.

In connection with these additional capital contributions, effective October 1, 1975, the general and limited partners executed an amendment to the partnership agreement (herein the amendment). The amendment created two classes of limited partners. All of the original limited partners, except for the withdrawing partner, were designated as class A limited partners. Together with Reger and the new partners, the six original partners who made new capital contributions also became class B partners. Reger, Rautenstrauch, and Luksch continued as the general partners.

The amendment also provided that the partnership was to be owned 49 percent by the class A limited partners, 49 percent by the class B limited partners, and 2 percent by the general partners. Accordingly, before and after the new capital contributions were made, the partnership records reflected ownership percentages as follows:

|  | *Ownership percentage 9/30/75* |
|---|---|
| *Limited partners* |  |
| L. Levitz | 30 |
| G. Conner | 10 |
| A. Nilson | 2 |
| F. Cohen | 10 |
| L. Turner | 2 |
| H. Dye | 10 |
| J. Marshal | 2 |
| C. Williams | 10 |
| J. Billington | 6 |
| T. Becker | 2 |
| B. Wise | 4 |
| H. Bier | 5 |
| T. Becker, et al | 3 |
| E. Bartlett | 4 |
|  | 100 |
|  |  |
| *General partners* |  |
| C. Rautenstrauch | 0 |
| H. Luksch | 0 |
| L. Reger | [6]0 |

---

[6]However, the general partner did own a residual interest in gains arising from major capital events. See note 5 *supra*.

| Class A–Ltd. | Ownership percentage 10/1/75 to 12/31/75 |
|---|---|
| L. Levitz | 17.234 |
| G. Conner | 5.745 |
| A. Nilson | 0.980 |
| F. Cohen | 4.900 |
| L. Turner | 1.149 |
| H. Dye | 4.900 |
| J. Marshal | 1.149 |
| C. Williams[7] | --- |
| J. Billington | 3.447 |
| T. Becker | 0.980 |
| B. Wise | 2.298 |
| H. Bier | 2.450 |
| T. Becker, et al | 1.470 |
| E. Bartlett | 2.298 |
| | 49.000 |

| Class B–Ltd. | |
|---|---|
| G. Conner | 4.900 |
| L. Turner | 0.980 |
| J. Marshal | 0.980 |
| J. Billington | 2.940 |
| B. Wise | 1.960 |
| E. Bartlett | 1.960 |
| L. Reger | 9.800 |
| J. H. Williams | 9.800 |
| F. Williams | 9.800 |
| K. Lipke | 5.880 |
| | 49.000 |

| General | |
|---|---|
| C. Rautenstrauch | 0.666 |
| H. Luksch | 0.667 |
| L. Reger | 0.667 |
| | 2.000 |
| | 100.000 |

With the exception of the losses allocated to the withdrawing partner, the amendment reallocated 98 percent of all the

---

[7] C. Williams was the "withdrawing partner."

partnership's 1975 losses to the class B limited partners. This reallocation was made expressly in consideration of the new capital contributions made to the partnership. The amendment also reallocated 2 percent of all the partnership's 1975 losses to the general partners.

On its 1975 return, the partnership reported losses of $933,825.[8] In accordance with the terms of the amendment, the partnership allocated these losses as follows:

| Class A–Ltd. | Percent |
|---|---|
| L. Levitz | --- |
| G. Conner | --- |
| A. Nilson | --- |
| F. Cohen | --- |
| L. Turner | --- |
| H. Dye | --- |
| J. Marshal | --- |
| C. Williams[9] | (78,021) |
| J. Billington | --- |
| T. Becker | --- |
| B. Wise | --- |
| H. Bier | --- |
| T. Becker, et al. | --- |
| E. Bartlett | --- |
| | |
| Class B–Ltd. | |
| G. Conner | (83,757) |
| L. Turner | (16,751) |
| J. Marshal | (16,751) |
| J. Billington | (50,254) |
| B. Wise | (33,503) |
| E. Bartlett | (33,503) |
| L. Reger | (167,513) |
| J. H. Williams | (167,513) |
| F. Williams | (167,513) |
| K. Lipke | (100,508) |
| | (837,566) |

[8] The parties now agree that the partnership accrued losses of only $849,724 in 1975.

[9] The partnership used the interim closing of the books method of accounting in order to allocate losses to the withdrawing partner.

*General*

| | |
|---|---|
| C. Rautenstrauch ............... | (5,694) |
| H. Luksch ........................ | (5,700) |
| L. Reger ........................ | (5,700) |
| | (17,094) |
| | [10](932,681) |

On their 1975 returns, petitioners (Lipke, J. Williams, F. Williams, Rautenstrauch, and Reger) reported their distributive shares of these losses. In his notices of deficiency, respondent disallowed that portion of the reported losses attributable to losses accrued by the partnership prior to October 1, 1975.[11]

The primary issue is whether the partnership properly allocated its 1975 losses among its partners. Respondent contends that section 706(c)(2)(B) prevents the partnership from reallocating losses accrued before October 1, 1975, to either the class B limited partners or to the general partners. Petitioners counter that prior to the Tax Reform Act of 1976, section 706(c)(2)(B) did not prevent the retroactive reallocation of losses to new partners. Petitioners further argue that, even assuming former section 706(c)(2)(B) governs situations involving the admission of new partners, it does not prevent the retroactive reallocation of losses to those petitioners who were already partners when the reallocation was made. For the following reasons, we hold that the partnership's retroactive reallocation of losses to the class B limited partners was not permitted by section 706(c)(2)(B) because it was made as a result of additional capital contributions. It makes no difference that the additional capital was contributed by, and the resulting retroactive reallocation was made to, both new and existing partners. However, we also hold that the partnership's retroactive reallocation of losses to the general partners was permissible since it did not result from additional capital

---

[10]Although the partnership reported losses of $933,825 on its 1975 return, only $932,681 was allocated to the partners. No explanation is provided for this discrepancy. See note 8 *supra.*

[11]Respondent does not challenge the partnership's allocation of losses accrued from Oct. 1, 1975, through Dec. 31, 1975.

contributions and, therefore, constituted nothing more than a readjustment of partnership items among existing partners.

Section 702(a) requires a partner to report his distributive share of the partnership's income or loss. With certain exceptions, section 704(a) provides that a partner's distributive share is to be determined by the partnership agreement.[12] A partnership agreement includes any amendments made before the time for filing the partnership return. Sec. 761(c). However, section 706(c)(2) provides for certain tax consequences to a partner whose partnership interest changes during the partnership's taxable year. Prior to the Tax Reform Act of 1976, that section provided in part as follows:

> The taxable year of a partnership shall not close (other than at the end of a partnership's taxable year as determined under subsection (b)(1)) with respect to a partner who sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced, *but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the taxable year.* [Emphasis added.]

In *Richardson v. Commissioner*, 76 T.C. 512 (1981), affd. 693 F.2d 1189 (5th Cir. 1982), this Court ruled that even prior to the Tax Reform Act of 1976, section 706(c)(2)(B) was applicable to situations involving the admission of new partners.[13] Therein, we held that the reduction in the capital interests of the original partners resulting from the admission of the new partners constituted a reduction of interests within the meaning of section 706(c)(2)(B). The fact that the original partners' equity interests in the partnership remained the same was deemed to be irrelevant. Accordingly, under section 706(c)(2)(B), the original partners and the new partners were required to determine their distributive shares of partnership items by taking into account their varying interests in the

---

[12]Respondent does not contend herein that the principal purpose of the partnership's allocation of its 1975 losses was the "avoidance or evasion of any tax" within the meaning of sec. 704(b)(2) as in effect during that year. Cf. *Goldfine v. Commissioner*, 80 T.C. 843 (1983).

[13]After the phrase "with respect to a partner whose interest is reduced," the Tax Reform Act of 1976 inserted into sec. 706(c)(2)(B) the parenthetical "whether by entry of a new partner, partial liquidation of a partner's interest, gift, or otherwise." This Court determined in *Richardson v. Commissioner*, 76 T.C. 512 (1981), affd. 693 F.2d 1189 (5th Cir. 1982), that this amendment merely codified prior law.

partnership during the taxable year. Thus, a retroactive reallocation of partnership items to the new partners was not allowable. See also *Moore v. Commissioner*, 70 T.C. 1024, 1031 (1978).

Although petitioners admit *Richardson* is directly on point with respect to the allocation of losses to the new partners in the instant case, they contend that the case was wrongly decided and now ask us to overrule it. However, buttressed by the affirmance of our decision by the Fifth Circuit Court of Appeals, we are fully satisfied with our decision in *Richardson* and are therefore unwilling to overrule it. See also *Hawkins v. Commissioner*, 713 F.2d 347 (8th Cir. 1983), affg. a Memorandum Opinion of this Court; *Snell v. United States*, 680 F.2d 545 (8th Cir. 1982); *Williams v. United States*, 680 F.2d 382 (5th Cir. 1982). Accordingly, since petitioners James, Francis, and Lipke were newly admitted as partners on October 1, 1975, they are not entitled to report losses accrued by the partnership prior to that date.

We also hold that section 706(c)(2)(B) prevents the retroactive reallocation of losses to petitioner Reger as a limited partner even though he was already a partner when he made his additional capital contribution. Together with the new capital contributions made by the new partners and by six of the original limited partners, Reger's additional capital contribution reduced the capital interests of the noncontributing partners. For purposes of section 706(c)(2)(B), we find no difference between a reduction in partners' interests resulting from the admission of new partners, as in *Richardson*, and, as here, the reduction in partners' interests resulting from additional capital contributions made by existing partners. In both situations, partners' interests were reduced and retroactive reallocations were made as a result of the additional capital contributions. We are unwilling to sustain, for example, the retroactive reallocations of losses made to petitioner Reger merely because he had previously contributed $34 to the partnership, and yet deny petitioners Lipke, James, and Francis that same benefit because they were new partners. That would create an illusory distinction which the language of section 706(c)(2)(B) simply does not require us to make.

With respect to the partnership's retroactive reallocation of losses to the general partners, however, we find that it did not result from additional capital contributions and therefore did not contravene the varying interest rules of section 706(c)(2)(B). Prior to October 1, 1975, the general partners held only a residual interest in gains arising from "major capital events." See note 5 *supra*. Pursuant to the October 1, 1975, amendment to the partnership agreement, however, the general partners were granted a 2-percent interest in the partnership's 1975 profits and losses including the losses accrued by the partnership during the preceding 9 months. In contrast to the retroactive reallocation of losses to the class B limited partners, this reallocation to the general partners was not made in consideration for additional capital contributions. General partners Rautenstrauch and Luksch made no additional capital contributions and Reger's contribution was made in exchange for a limited partnership interest, not for an increase in his interest as a general partner. Accordingly, this reallocation of losses to the general partners was not directly accompanied by a reduction in any other partner's capital interest within the meaning of section 706(c)(2)(B). It constituted nothing more than a readjustment of partnership items among existing partners which, by itself, is permissible. *Smith v. Commissioner*, 331 F.2d 298 (7th Cir. 1964), affg. a Memorandum Opinion of this Court; *Foxman v. Commissioner*, 41 T.C. 535 (1964), affd. 352 F.2d 466 (3d Cir. 1965). See *Moore v. Commissioner*, 70 T.C. 1024, 1033 (1978).

Finally, we must determine how much of the partnership's 1975 losses can be allocated to the period after September 30, 1975. In his notice of deficiency, respondent allocated losses of $125,770 to that period. This determination was based on the partnership's interim closing of its books as of September 30, 1975, whereby it determined how much of its losses were allocable to the withdrawing partner.[14] Significantly, petitioners do not dispute that respondent's determination in this respect accurately reflects the amount of losses incurred by

---

[14]The partnership allocated $78,021 of its 1975 losses to the withdrawing partner. Since the withdrawing partner owned a 10-percent interest in the partnership prior to his withdrawal on Oct. 1, 1975, respondent determined that the partnership must have accrued

the partnership during the relevant period. Rather, they simply argue that the partnership should be allowed to use the "year-end totals" method of accounting and thereby allocate losses of $212,431 to the period October 1, 1975, through December 31, 1975.[15]

We summarily reject petitioners' argument. The amount of losses accrued by the partnership after September 30, 1975, is clearly shown by the partnership's interim closing of its books and allocation of losses to the withdrawing partner. See note 14 *supra*. There is simply no justification for now allowing the partnership to use the relatively less accurate "year-end totals" method of accounting for purposes of allocating losses to petitioners. Accordingly, we sustain respondent's determination in this respect. Cf. *Moore v. Commissioner, supra; Richardson v. Commissioner, supra.*

To reflect concessions and the foregoing,

*Decisions will be entered under Rule 155.*

as of that date $780,210 of the $933,825 of losses the partnership reported on its 1975 return (see note 10 *supra*), thus evidencing that the partnership accrued losses of $153,804 in the last quarter of 1975. When this $153,804 is reduced by agreed depreciation adjustments of $28,034, the result is an accrued loss of $125,770 for that period.

[15]The "year-end totals" method of accounting involves computing partnership income or loss at the end of the year and allocating that total ratably over the year. Thus, petitioners seek to allocate $212,431 of the partnership's total 1975 losses of $849,724 (see note 8 *supra*), to the last quarter of 1975.