Cecil R. **RICHARDSON and Doris C. Richardson, George Schneider, Jr. and Mary Ann Schneider, and Irwin J. Rice and Martha J. Rice, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 81–4387.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1982.

---

19. For example, the ALJ observed that the UAW contract contained a check-off clause.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, David English Carmack, Stephen Gray, Tax Division, Dept. of Justice, Kenneth W. Gideon, Chief Counsel, I.R.S., John H. Menzel, Director, Tax Lit. Div., Chief Counsel, Washington, D.C., for petitioners-appellants.

D. Irvin Couvillion, Baton Rouge, La., for respondent-appellee.

Before RUBIN, RANDALL and JOLLY, Circuit Judges.

RANDALL, Circuit Judge:

Two of the taxpayers in this case were admitted as partners in each of three limited partnerships on the last day of the partnership's taxable year. Each taxpayer appeals from the judgment of the Tax Court denying him a deduction, provided for in the related partnership agreement, for losses incurred by the partnership prior to the date on which he was admitted as a partner. The third taxpayer was a partner in all three partnerships throughout the taxable year in issue, but his interest in each of the partnerships was sharply reduced on the last day of the taxable year by reason of the admission of new partners. He appeals from the judgment of the Tax Court denying him a deduction for the losses disallowed to the newly admitted partners. Finding no error, we affirm.

I. THE FACTS AND DECISION BELOW.

Following is a brief description of the facts relevant to this appeal, as found by the Tax Court primarily on the basis of stipulations by the parties.

Cecil R. Richardson,[1] in conjunction with another builder, constructed three separate apartment projects in Louisiana. The first,

1. Doris C. Richardson, Mary Ann Schneider and Martha J. Rice are parties to this proceeding only by virtue of having filed joint returns with their husbands.

Batture Apartments (Batture), was formed as a general partnership on February 1, 1972, with four general partners. The second, Bengal Towers I Apartments (Bengal I), also began in early 1972 as a general partnership with two general partners. The third, Bengal Towers II Apartments (Bengal II), began on February 27, 1973, as a general partnership with three general partners. Richardson was a general partner in all three partnerships from their respective dates of formation until he sold his interest in 1976. Each partnership used the cash basis of accounting and a tax year ending December 31.

Each of the apartments was encumbered by substantial mortgages and burdened with other debts which arose during the operation of the projects. The three partnerships experienced difficulty in making their necessary monthly payments so that, during 1974, default and foreclosure on the various mortgages appeared likely. Other creditors, in addition to the mortgage holders, were not timely paid.

The partnerships could not obtain any additional funds from outside borrowing, and the existing partners were unwilling to contribute further capital to put the three partnerships on a sound financial basis. As a result, the partnerships, represented by Richardson, contacted Jack N. Dyer, Jr., a developer, builder and manager of several apartment complexes, who, with other investors, specialized in the financial restoration of distressed or ill-managed properties.

After negotiations, the partners and Dyer reached an agreement on all three partnerships and their respective apartment projects. That agreement, in summary, admitted Dyer as a general partner in each of the partnerships and gave him management of the related apartment projects; allowed the existing partners to remain as general partners but insulated them from having to make further capital contributions; converted each of the partnerships into a limited partnership and provided that a group of new limited partners (organized by Dyer) could join for a 75% capital interest; and specified that the cash and notes acquired from the newly-admitted limited partners would be used to retire debt, bring the mortgages current and provide an operating fund for future needs. Certain debts in each partnership were left for the existing partners to retire.

The result of this agreement was that Dyer and a group of new investors infused funds into the partnerships by becoming partners on December 31, 1974. New partnership agreements were executed that day, and the new group, including George Schneider, Jr. and Irwin J. Rice, became partners, owning, in the aggregate, a 75% interest in each partnership. Dyer was admitted as a general partner.

The partnership interests in the partnerships, both before and on December 31, 1974, were as follows:

**Batture**

| Partner | Ownership before December 31, 1974 | Ownership on December 31, 1974 |
|---|---|---|
| Richardson | 25% | 1% general partner |
| Dyer | —— | 21% general partner |
| Schneider | —— | 5% limited partner |
| Rice | —— | 5% limited partner |
| Others | 75% | 3% general partners |
| Others | —— | 65% limited partners |
| Total | 100% | 100% |

**Bengal I**

| Partner | Ownership before December 31, 1974 | Ownership on December 31, 1974 |
|---|---|---|
| Richardson | 50% | 1% general partner |
| Dyer | —— | 23% general partner |
| Schneider | —— | 5% limited partner |
| Rice | —— | 5% limited partner |
| Other | 50% | 1% general partner |
| Others | —— | 65% limited partners |
| Total | 100% | 100% |

**Bengal II**

| Partner | Ownership before December 31, 1974 | Ownership on December 31, 1974 |
|---|---|---|
| Richardson | 33⅓% | 1% general partner |
| Dyer | —— | 22% general partner |
| Schneider | —— | 5% limited partner |
| Rice | —— | 5% limited partner |
| Others | 66⅔% | 2% general partners |
| Others | —— | 65% limited partners |
| Total | 100% | 100% |

The new limited partners entering the partnerships on December 31, 1974, were required to buy at least one unit (a 5% interest) in each partnership. A unit cost $4,205.60 in Batture; $4,027 in Bengal I; and $5,131.53 in Bengal II, for a total cost of $13,364.13 to buy one unit in each of the three partnerships. This is the investment made by both Schneider and Rice. Overall, the thee partnerships received $116,972 in cash and $83,489.90 in notes from the newly admitted partners on December 31, 1974.

As an incentive to the new limited partners to invest in these troubled projects, the partnership agreements provided that partnership profits or losses would be disproportionately allocated to the new limited partners as follows: 99% for 1974, 1975 and 1976; 75% for 1977 and 1978; and 50% for all subsequent years. The issue in this case concerns only 1974 and the allocation of 99% of the entire year's losses for each partnership to partners who entered that partnership on the last day of that year.

For the taxable year 1974, the three partnerships showed on their information returns respective net losses (including the full year's depreciation) as follows:

| | |
|---|---|
| Batture | $125,758.06 |
| Bengal I | $69,000.09 |
| Bengal II | $77,525.31 |
| Total | $272,283.46 |

The 99% of this loss ascribable to the new limited partners is $269,560.62 or, expressed in terms of the loss attributable to each unit, is a $17,791 loss for a limited partner who owned one unit in each of the partnerships.

Schneider and Rice each claimed total 1974 losses from the three partnerships (including depreciation) of $18,665 on his 1974 return. Thus, for a total investment in the three partnerships of $13,364.13 in cash and notes, each was allocated total 1974 losses in the three partnerships in excess of that.

The Commissioner disallowed the claimed loss deduction for Schneider and Rice on the ground that a newly admitted partner cannot share in partnership losses (including depreciation) which are sustained prior to his entry. The Commissioner allowed to each his pro rata share of 1/365th of the total 1974 losses, to represent the one day (December 31) that these individuals were actually partners.

On August 23, 1979, Schneider and Rice filed petitions in the Tax Court seeking redetermination of deficiencies asserted by the Commissioner of $9,390 and $11,402, respectively, for the taxable year ended December 31, 1974.

The deficiency originally proposed by the Commissioner against Richardson for 1974 (and as amended at trial) arose differently from the deficiencies proposed for Schneider and Rice. Because Richardson does not challenge on appeal the Tax Court's resolution of several of the issues involved in the deficiency, it would serve no useful purpose to chronicle them here. The one issue that does remain relating to Richardson is his contention, asserted in his petition for redetermination of deficiency filed in the Tax Court on June 2, 1978, that if preentry partnership losses allocated to the newly admitted partners are to be disallowed, then he and the other existing partners should be entitled to claim those losses as deductions for 1974.

On April 1, 1981, the Tax Court, in an opinion reported at 76 T.C. 512 (1981), sustained deficiencies against Richardson, Schneider and Rice for 1974 in the respective amounts of $4,630.27, $5,935 and $6,903. Insofar as Schneider and Rice were concerned, the Tax Court noted that it had held in earlier cases [2] that where there is a transfer of a partnership interest during the taxable year, I.R.C. § 706(c)(2),[3] which

---

**2.** *Marriott v. Commissioner,* 73 T.C. 1129 (1980); *Moore v. Commissioner,* 70 T.C. 1024 (1978).

**3.** All statutory references are to the Internal Revenue Code of 1954, as in effect during 1974, unless otherwise indicated.

I.R.C. § 706(c) provides as follows:
§ 706. *Taxable Years of Partner and Partnership.*

(c) *Closing of Partnership Year.*
  (1) *General Rule.*
   Except in the case of a termination of a partnership and except as provided in para-

provides for certain tax consequences to a partner whose partnership interest changes during the partnership's taxable year, supersedes I.R.C. § 704,[4] which provides generally that the partnership agreement shall determine a partner's distributive share of

graph (2) of this subsection, the taxable year of a partnership shall not close as the result of the death of a partner, the entry of a new partner, the liquidation of a partner's interest in the partnership, or the sale or exchange of a partner's interest in the partnership.

(2) *Partner Who Retires or Sells Interest in Partnership.*

(A) *Disposition of Entire Interest.*
The taxable year of a partnership shall close—
(i) with respect to a partner who sells or exchanges his entire interest in a partnership, and
(ii) with respect to a partner whose interest is liquidated, except that the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year. Such partner's distributive share of items described in section 702(a) for such year shall be determined, under regulations prescribed by the Secretary or his delegate, for the period ending with such sale, exchange, or liquidation.

(B) *Disposition of Less Than Entire Interest.*
The taxable year of a partnership shall *not* close (other than at the end of a partnership's taxable year as determined under subsection (b)(1)) with respect to a partner who sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced, but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the taxable year.

**4.** I.R.C. § 704 provides in relevant part as follows:

§ 704. *Partner's Distributive Share.*

(a) *Effect of Partnership Agreement.*

A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement.

(b) *Distributive Share Determined by Income or Loss Ratio.*

A partner's distributive share of any item of income gain, loss, deduction, or credit shall be determined in accordance with his distributive

profits and losses. The Tax Court defined the question presented to it by Schneider and Rice as whether section 706 applies to the admission of new partners or only to the transfer by a partner of a partnership interest. The Tax Court held that section

share of taxable income or loss of the partnership, as described in section 702(a)(9), for the taxable year, if—
(1) the partnership agreement does not provide as to the partner's distributive share of such item, or
(2) the principal purpose of any provision in the partnership agreement with respect to the partner's distributive share of such item is the avoidance or evasion of any tax imposed by this subtitle.
(c) *Contributed Property.*
(1) *General Rule.*
In determining a partner's distributive share of items described in section 702(a), depreciation, depletion, or gain or loss with respect to property contributed to the partnership by a partner shall, except to the extent otherwise provided in paragraph (2) or (3), be allocated among the partners in the same manner as if such property had been purchased by the partnership.
(2) *Effect of Partnership Agreement.*
If the partnership agreement so provides, depreciation, depletion, or gain or loss with respect to property contributed to the partnership by a partner shall, under regulations prescribed by the Secretary or his delegate, be shared among the partners so as to take account of the variation between the basis of the property to the partnership and its fair market value at the time of contribution.
(3) *Undivided Interests.*
If the partnership agreement does not provide otherwise, depreciation, depletion, or gain or loss with respect to undivided interests in property contributed to a partnership shall be determined as though such undivided interests had not been contributed to the partnership. This paragraph shall apply only if all the partners had undivided interests in such property prior to contribution and their interests in the capital and profits of the partnership correspond with such undivided interests.
(d) *Limitation on Allowance of Losses.*
A partner's distributive share of partnership loss (including capital loss) shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred. Any excess of such loss over such basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership....

706(c)(2)(B)[5] applies to the reduction in an existing partner's interest by reason of the admission of a new partner and that the admission of one or more partners during the taxable year necessitates the allocation of losses among the existing and new partners to reflect their varying interests in the partnership during the taxable year. The Tax Court also held that Schneider and Rice were entitled to their pro rata share of 99% of the 1974 partnership losses *actually paid* on December 31, 1974. The court found that the total deductible expenses actually paid by the three partnerships on December 31, 1974, were $111,033.60. Of this amount, Schneider and Rice were each entitled to claim $7,254.21. Each was also entitled to his share of the allowable depreciation on December 31.

With respect to Richardson, the Tax Court, again relying primarily on section 706(c)(2)(B), rejected Richardson's argument that each partnership's taxable year should be closed (and the basis of each partner in his partnership interest determined) on December 30 (the date on which agreement was reached to admit the new partners), rather than on December 31 (the end of the partnership's taxable year). Since Richardson's interest in each partnership was reduced to 1% on December 31, 1974, and he had already claimed as much of the 1974 loss for each partnership as his year-end basis in that partnership allowed, the Tax Court agreed with the Commissioner that Richardson could not derive any benefit from the losses disallowed to Schneider, Rice and the other new limited partners.

## II.  DEDUCTIBILITY OF PRE–ADMISSION PARTNERSHIP LOSSES.

█  On appeal,[6] Schneider and Rice have launched a barrage of arguments, all directed toward establishing that the Tax Court erred in holding that they were not entitled to claim as a deduction partnership losses sustained prior to their admission into the partnerships. All but one of these arguments have been mooted by this court's decision in *Williams v. United States,* 680 F.2d 382 (5th Cir.1982), which was filed during the interval between the date briefing was completed in this case and the date on which oral argument was heard. In *Williams,* citing, *inter alia,*[7] the Tax Court's decision in this case, we held that "under section 706(c)(2)(B) as in effect during [1974], the varying interest rule for determining partnership shares prohibited retroactive allocation of partnership losses to incoming partners who acquired their partnership interests through capital investment." 680 F.2d at 386. We also held that even if the case were not controlled by section 706(c)(2)(B), the assignment of income doctrine, which was discussed at length in the opinion, would prohibit retroactive allocation to the newly admitted partners of losses sustained by the partnerships prior to the respective dates of their admission into the partnerships. *Id.*

The only argument advanced by Schneider and Rice before *Williams* was decided that was not mooted by *Williams,* and which is, indeed, reurged in a supplemental, post-*Williams* brief, is that in this case, the existing partners were required to make, and in fact made, additional capital contributions to the partnerships concurrent with the capital contributions of the newly admitted partners. In *Williams,* none of the existing partners made capital contributions to the partnership when the new partners were admitted. Schneider and Rice argue that whenever existing partners make capital contributions to a partnership, concurrent with the contributions of new partners, the capital interests of the existing partners do not "reduce" within the meaning of section 706(c)(2)(B). However, we note that

---

5.  See note 3 *supra.*

6.  The Commissioner filed the initial notice of appeal in this case (on September 11, 1981). Richardson, Schneider and Rice each filed a notice of appeal on September 14, 1981. By

joint stipulation of the parties, the Commissioner dismissed his appeal.

7.  The panel in *Williams* also cited *Marriott* and *Moore,* see note 2 *supra,* and *Rodman v. Commissioner,* 542 F.2d 845 (2d Cir.1976).

section 706(c)(2)(B) does not use the word "capital" to modify the word "interest" in the phrase "with respect to a partner whose interest is reduced." In view of the fact that section 706(c)(2)(B) mandates that such a partner's distributive share of items described in I.R.C. § 702(a),[8] which include profits and losses, be determined by taking into account his varying "interests" in the partnership during the taxable year, we think that the clear import of section 706(c)(2)(B) is that it is the existing partner's varying interests in profits and losses which govern, rather than his varying capital interests, at least in a situation such as we have here in which the reduction is occasioned by capital contributions by, and the admission of, new partners. Clearly, in the present case, the existing partners' interests in profits and losses were dramatically reduced by reason of the admission of the new partners. We conclude, therefore, that the Tax Court was correct in denying to Schneider and Rice deductions for the pre-admission losses of the partnerships.

We note further that although Schneider and Rice go to some lengths to dissuade us from adopting the position on assignment of income taken by the Court of Appeals for the Eighth Circuit in *Snell v. United States,* 680 F.2d 545 (8th Cir.1982), they go on to mis-describe *Williams* as "not [holding] that assignment of income principles [govern] the validity of preadmission allocations." Clearly, the holding of this court in *Williams* that · the assignment ·of income theory prohibits the retroactive allocation to newly admitted partners of losses sustained by the partnerships prior to the admission of. such partners would not be affected by the fact that the existing partners made a capital contribution at the time of the admission of the new partners.[9]

In summary, if there was a serious question in 1974 about the deductibility of pre-admission losses by newly admitted partners, *Williams* laid it to rest and mandates affirmance of the Tax Court's holding in this case denying such losses to Schneider and Rice.

## III. DEDUCTIBILITY TO EXISTING PARTNERS OF LOSSES DISALLOWED TO NEW PARTNERS.

■ Richardson argues that if we affirm the Tax Court's holding denying to the newly admitted partners deductions for pre-admission losses, then he and the other original partners should be allowed to deduct these losses, lest they drop through the crack, thereby benefiting no one. The Tax

---

**8.** I.R.C. § 702(a) provides in relevant part as follows:

§ 702. *Income and Credits of Partner.*
(a) *General Rule.*
In determining his income tax, each partner shall take into account separately his distributive share of the partnership's—

. . . .

(8) other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary or his delegate, and
(9) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection.

**9.** Nor would it be affected by the distinction urged by Schneider and Rice, perhaps in tacit recognition that *Williams* may indeed have some effect on the assignment of income aspect of this case, that *Williams* involved a start-up situation, whereas this case involves partnerships in full operation, generating all too real losses, for the entire taxable year at issue. The partnerships involved in *Williams* had no rental income in 1974 because the relat-

ed apartment projects were under construction, but they had reported losses (on the accrual method), consisting primarily of construction interest and advertising expenses, in excess of $1,000,000. By contrast, the partnerships at issue in this case had total rental income of approximately $240,000 during 1974. Schneider and Rice here make the bizarre argument (without benefit of citations) that if there was a prohibited assignment of pre-admission losses in this case "that violation is negated or offset by the income earned during that period which was likewise allocated to the partners subsequently admitted." But of course, factually, the losses were not offset, which is what occasioned this suit, and the fact that profits and losses were allocated in the same fashion under the partnership agreements does not distinguish this case from *Williams. See* 680 F.2d at 383 n. 4. Nor has the Commissioner argued here, as a reason for disallowing deductions for pre-admission losses, that the losses were in any respect artificial or lacking in economic substance.

Court held that Richardson was not entitled to deduct the losses in any of the partnerships because his adjusted basis in his partnership interest at the close of the taxable year (December 31, 1974) was inadequate to support the deduction. That decision is undeniably correct. I.R.C. § 704(d) [10] places a ceiling on the amount of loss a partner can claim as his share of the total partnership losses for the year; his loss is limited to his adjusted basis "at the end of the partnership year in which such loss occurred."

Richardson argues that the partnership's year should be deemed to have closed on December 30, 1974, the day before the new partners were admitted. The argument is based on the notion that if the taxable year is to be, in effect, segmented for purposes of determining the respective amounts of losses allocable to existing and newly admitted partners, then logic demands that the partners' respective adjusted bases, the limiting factor on the availability of deductions, be similarly segmented. Richardson's position is, however, directly contravened by I.R.C. § 706(c)(1) [11] which states that "the taxable year of a partnership shall not close as the result of . . . the entry of a new partner . . . ."

We affirm, therefore, the Tax Court's ruling denying to Richardson a deduction for the losses disallowed to the newly admitted partners.

AFFIRMED.

