BERNARD J. MEINERZ and ELAINE MEINERZ, Et Al., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Meinerz v. Commissioner
Docket Nos. 3149-78, 3150-78
United States Tax Court
T.C. Memo 1983-191; 1983 Tax Ct. Memo LEXIS 598; 45 T.C.M. (CCH) 1237; T.C.M. (RIA) 83191; April 6, 1983. Stephen W. Marvin and Bruce O'Neill, for the petitioners. Joseph R. Peters, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: In these consolidated cases, respondent determined the following deficiencies in income tax: Petitioners
Docket No.
Year
Deficiencies
Bernard J. Meinerz and
3149-78
1972
$130,829.66
Elaine Meinerz
1973
7,835.09
Archie Meinerz and
3150-78
1972
150,933.98
Viola Meinerz
1973
9,861.74
The issues remaining for decision are (1) whether petitioners may deduct partnership losses allocable to the period during the taxable year prior to the time petitioners acquired their partnership interests; and (2) if it is determined that the losses cannot be retroactively allocated, whether respondent's reallocation to the new partners of 3/365 of *602 the total partnership loss for 1972 was proper. The facts in these cases were fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. A summary of the relevant facts is set forth below. Petitioners Bernard J. Meinerz and Elaine Meinerz, husand and wife, resided in Denver, Colorado when they filed their petition in Docket No. 3149-78. Petitioner Elaine Meinerz is a party to this action solely by reason of having filed a joint return with her husband. Accordingly, reference will only be made to petitioner Bernard J. Meinerz. Petitioners Archie Meinerz and Viola Meinerz, husband and wife, resided in Franklin, Wisconsin when they filed their petition in Docket No. 3150-78. Since petitioner Viola Meinerz is a party hereto solely by reason of having filed a joint return with her husband, reference will only be made to petitioner Archie Meinerz. (Bernard J. Meinerz and Archie Meinerz will sometimes hereinafter be referred to as petitioners). Castilian Heights Joint Venture, Phase I and III ("Castilian") was formed on August 5, 1970. The four original partners, Sydney Lilly, Joel Lee, Richard Fisher, and Roy Reiman, formed the *603 partnership by contributing mortgaged land which they had previously held in joint tenancy. The partnership agreement, dated August 5, 1970, provided that the interest of the partners in Castilian would be as follows: Name
Percentage
Lee
35.71428
Reiman
25.71428
Fisher
25.71428
Lilly
12.85716
The agreement further provided that all partnership profits, losses, and distributions were to be divided among the partners in accordance with their interest in the partnership. Castilian developed an apartment project on such land until December 29, 1972 when Castilian transferred the development to I.L.D. 72 Associated ("I.L.D."), a limited partnership in exchange for a 49 percent partnership interest. Also on December 29, 1972, Castilian's joint venture agreement was amended to admit new partners with capital contributions as follows: Donald Runge $15,000, Archie Meinerz $100,000, Bernard Meinerz $100,000 and Edward Noha $24,000. The agreement provided that the joint venture interest of the partners would be as follows: Name
Percentage
Donald Runge
3.0
Bernard Meinerz
20.0
Archie Meinerz
20.0
Edward Noha
4.0
Joel Lee
19.0
Roy Reiman
13.5
Richard Fisher
13.5
Sydney Lilly
7.0
100 percent
*604 The agreement further provided that profits of Castilian for the year 1972 and all profits, losses, and current operating distributions subsequent to December 31, 1972 were to be divided among the partners in accordance with their interest in the partnership.However, losses of Castilian for the year 1972 were to be allocated among the partners as follows: Name
Percentage
Donald Runge
5.6
Bernard Meinerz
38.0
Archie Meinerz
38.0
Edward Noha
9.0
Joel Lee
3.3
Roy Reiman
2.4
Richard Fisher
2.4
Sydney Lilly
1.3
100 percent
On their 1972 return, petitioners each deducted $217,390.23 as their share of Castilian's losses for the petitioners' 1972 taxable year. In his notice of deficiency, respondent determined that petitioners should each be allowed only $1,769.76 of the loss. Such determination was based on the number of days that each partner had an investment in the partnership. Thus, since respondent determined that Castilian had a year-end ordinary loss for 1972 totalling $566,632.55, it allowed petitioners their share of such loss for 3/365 of the year based on the loss-sharing ratio for 1972 in the partnership agreement *605 (38 percent for each petitioner). The principal issue for decision is whether petitioners may deduct, pursuant to a special loss allocation agreement, the portion of the partnership losses for 1972 for the period during the year before they were admitted to the partnership. Resolution of this issue requires a legal determination as to whether the retroactive allocation of partnership losses to a newly admitted partner who purchases his interest directly from the partnership is permissible under the provisions of Subchapter K, in effect during 1972. Respondent advances two theories in support of his determination that the retroactive allocation of preadmission losses to petitioners is not valid. Respondent's first argument is that section 706(c)(2)(B), [1] as interpreted by our decisions in Moore v. Commissioner,70 T.C. 1024 (1978) and Marriott v. Commissioner,73 T.C. 1129 (1980), requires petitioners to determine their distributive share of losses by taking into account their varying partnership interests during the taxable year notwithstanding any *606 retroactive allocation of such losses. Respondent next contends that any attempt to allocate partnership losses incurred by the partnership to petitioners, who were not members of the partnership during the period the losses were incurred, violates the assignment of income doctrine. Section 702(a) contains the general rule that each partner must take into account in computing his income his distributive share of partnership income or loss. Section 704(a) provides that a "partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement." Section 761(c) defines the term "partnership agreement" to include any modifications made to the agreement prior to the time prescribed by law for filing the partnership return.
Section 706(c)(1) provides *607 that the taxable year of a partnership shall not close as the result of the addition of a new partner, the death of a partner, or the liquidation or sale or exchange of a partner's interest, except if the partnership terminates or except as provided in paragraph (2) of the subsection. Section 706(c)(2) provides for certain tax consequences to partners in connection with shifts in partnership interest during the partnership's taxable year: SEC. 706. TAXABLE YEARS OF PARTNER AND PARTNERSHIP. (c) CLOSING OF PARTNERSHIP YEAR.-- (2) PARTNER WHO RETIRES OR SELLS INTEREST IN PARTNERSHIP.-- (A) DISPOSITION OF ENTIRE INTEREST.--The taxable year of a partnership shall close-- (i) with respect to a partner who sells or exchanges his entire interest in a partnership, and (ii) with respect to a partner whose interest is liquidated, except that the taxable year of a partnership with respect to a partner who dies shall not close prior to the end of the partnership's taxable year. Such partner's distributive share of items described in section 702(a) for such year shall be determined, under *608 regulations prescribed by the Secretary or his delegate, for the period ending with such sale, exchange, or liquidation. (B) DISPOSITION OF LESS THAN ENTIRE INTEREST.--The taxable year of a partnership shall not close (other than at the end of a partnership's taxable year as determined under subsection (b)(1)) with respect to a partner who sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced, but such partner's distributive share of items described in section 702(a) shall be determined by taking into account his varying interests in the partnership during the taxable year. Under section 706(c)(2)(A), it is clear that if a partner sells or exchanges his entire partnership interest, the partnership year closes with respect to such partner on the date of such disposition and he is required to include in his income his distributive share for the period during which he was a partner. In such situation, the regulations expressly *609 provide that the transferee partner is required to include in his income his distributive share for the period during which he was a member of the partnership. Sec. 1.706-1(c)(2), Income Tax Regs.[2]
Where a partner disposes of less than his entire interest, section 706(c)(2)(B) requires that the transferor partner determines his distributive share "by taking into account his varying interest in the partnership during the taxable year." Although neither the statute nor the regulations deal with the tax consequences to the transferee partner, both this Court and the Second Circuit have held that the requirement that the transferee partner must also take into account his varying interest in the partnership *610 during that year is implicit in section 706(c)(2)(B). Rodman v. Commissioner,542 F.2d 845, 858 (2d Cir. 1976), revg. on this issue a Memorandum Opinion of this Court; Moore v. Commissioner,supra at 1031-1032. See Marriott v. Commissioner,supra.Thus, the law is clear that retroactive allocations of partnership losses to new partners who purchase their partnership interest from existing partners have no effect for tax purposes. Rodman v. Commissioner,supra,Marriott v. Commissioner,supra;Moore v. Commissioner,supra.
Petitioners however contend that Moore and Marriott are distinguishable since section 706(c)(2)(B) expressly applied to the situations we confronted therein where new partners purchased their partnership interest from existing partners. Petitioners claim, however, that where, as in the instant case, the new partners purchased their partnership interests directly from the partnership, the varying interest rule of section 706(c)(2)(B) does *611 not apply. Therefore, petitioners assert that the loss allocation agreement is controlling since section 761(c) permits the retroactive amendment of a partnership agreement changing the partners' allocable shares of income or losses. We disagree. The varying interest rule of section 706(c)(2)(B), as in effect during the year in question, applies "with respect to a partner who sells or exchanges less than his entire interest in the partnership or with respect to a partner whose interest is reduced." (Emphasis added.) The Tax Reform Act of 1976, Pub. L. 94-455, section 213(c)(1), 90 Stat. 1547-1548, amended section 706(c)(2)(B) by inserting, after the above-quoted phrase, the parenthetical "whether by entry of a new partner, partial liquidation of a partner's interest, gift, or otherwise." (Emphasis added.) In a recent case, Richardson v. Commissioner,76 T.C. 512 (1981), affd. 693 F.2d 1189 (5th Cir. 1982), we found, after reviewing the pertinent legislative history, that the varying interest rule of the Tax Reform Act of 1976 codified prior law and was equally applicable to pre-1976 years. 76 T.C. at 524. *612 We thus held that for partnership taxable years ended on or before December 31, 1975, section 706(c)(2)(B) prohibits the retroactive allocation of losses upon the admission of new partners. We stated (76 T.C. at 525): Prior to the admission of the new partners, petitioner Richardson owned 50-, 33.3-, and 25-percent capital interests in the three partnerships, respectively. After the admission of the new partners, he had effectively transferred all but 1 percent of his capital interest in each of the partnerships. We find that the admission of the new partners resulted in a reduction of the original partners' interests within the meaning of section 706(c)(2)(B). Accordingly, the original partners must report their distributive shares of partnership items for the period prior to and after the admission of the new partners in accordance with their varying interests in the partnerships during the year. They are prohibited from making a retroactive allocation to the new partners. This holding and rationale was affirmed by the Fifth Circuit, Richardson v. Commissioner,693 F.2d 1189 (5th Cir. 1982), affg. *613 76 T.C. 512 (1981), and followed in recent decisions. Snell v. United States,680 F.2d 545 (8th Cir. 1982); Williams v. United States,680 F.2d 382 (5th Cir. 1982); Roccaforte v. Commissioner,77 T.C. 263, 288-289 (1981); Atlas v. United States,555 F. Supp. 110 (N.D. Ill. 1982). We think that under Richardson,section 706(c)(2)(B) covers the situation herein where the partnership interests of existing partners are reduced by reason of the admission of a new partner who purchases his interest directly from the partnership. Before petitioners were admitted to Castilian, the respective partnership interest of Lee, Reiman, Fisher, and Lilly were approximately 35.7 percent, 25.7 percent, 25.7 percent, and 12.8 percent. Petitioners, upon their entry into Castilian, each received a 20 percent interest in the partnership's profits and losses while the respective shares of Lee, Reiman, Fisher, and Lilly were reduced to 19 percent, 13.5 percent, 13.5 percent, and 7 percent (except that petitioners were allocated a larger percentage of partnership losses for 1972). Such reduction in the percentage *614 interest of existing partners clearly involves a reduction of interest within the meaning of section 706(c)(2)(B). Richardson v. Commissioner,supra; Snell v. United States,supra;Williams v. United States,supra;Roccaforte v. Commissioner,supra;Atlas v. United States,supra.
Petitioners nevertheless argue that section 706(c)(2)(B) is inapplicable herein since there was no reduction in the value of the partnership interests of the existing partners upon their admission to the partnership although the percentage interests of the old partners may have been diminished. On brief, petitioners illustrate this point: A and B are equal partners in a partnership having $100,000 in assets. C is admitted to the partnership as an equal partner upon his contribution, to the partnership, of $50,000.Although A's and B's shares of partnership income, losses, capital, etc., are now 33-1/3% instead of 50%, there has been no reduction in their interest as the value of their interests, $50,000 each, remains the same. We do not agree. A similar argument was rejected by this Court in Richardson v. Commissioner,76 T.C. at 524-525 *615 wherein we found that the "reduced interest" language denotes the capital interest or the profit and loss interest and not an economic interest: We believe that the reference in subchapter K to a partner's "interest" can be a reference either to the capital interest or to the profit and loss interest of each partner. We will not define that term differently in section 706(c)(2)(B). Petitioners in effect request the Court to consider the fair market value of the original partners' equity in the partnerships, both before and after the transfer, to redetermine whether the original partners' interests have been "reduced" and whether section 706(c)(2)(B) is applicable. To ignore the common meaning of the term "interest" and to create an equity test within section 706(c) would not further the purposes of the section or subchapter K. As construed by this Court, the purpose of section 706(c)(2)(B) is to insure that the transferor of a partnership interest reports his share of partnership profits and losses prior to the transfer.We will not construe section 706(c)(2)(B) in such a manner as to allow petitioners to do indirectly what they could not do directly by requiring, in effect, an *616 appraisal of the partnerships' assets, before and after the admission of new partners. [76 T.C. at 524-525.] [3]
See also discussion of the Fifth Circuit in Richardson v. Commissioner,693 F.2d at 1194-1195; Snell v. United States,680 F.2d at 548; Williams v. United States,680 F.2d at 386. We hold that the reduction in interest under section 706(c)(2)(B) refers to a reduction in proportionate interest in the partnership without regard to the "size of the pie" in which the partner owns an interest. [4] Since we think that the varying interest rule in section 706(c)(2)(B) encompasses out situation, it is clear that the petitioners' distributive share, as well as that of the partners whose interest was reduced, must be determined by taking into account varying interests in the partnership. Richardson v. Commissioner, supra; Snell v. United States,supra;Williams v. United States,supra;Rodman v. Commissioner,542 F.2d 845 (2d Cir. 1976), revg. on this issue a Memorandum Opinion of this Court; Roccaforte v. Commissioner,supra; *617 Marriott v. Commissioner,73 T.C. 1129 (1980); Moore v. Commissioner,70 T.C. 1024 (1978); Atlas v. United States,supra.[5]
*618 Furthermore, we think that the Rodman,Moore, and Marriott decisions prohibit retroactive loss allocations to partners who were not members of the partnership at the time the losses were incurred. While those cases involved an actual transfer of a partnership interest from old partners to new partners, the same consequences under section 706(c)(2)(B) should obtain where one enters a partnership by purchasing his interest directly from the partnership. In both situations, the existing partners' interests are reduced and "picked up" by the incoming partners. Thus, the crucial consideration in determining the applicability of the "varying interest" rule is that, in both cases, there is a shift in partnership interests during the partnership's taxable year. Our conclusion that retroactive allocations of preadmission losses are prohibited rests on an even broader ground, to wit, such allocations violate the assignment of income doctrine. Helvering v. Horst,311 U.S. 112 (1940). The doctrine, described as "a cornerstone of our graduated income tax system" ( *619 United States v. Basye,410 U.S. 441, 450 (1973)) and as "the first principle of income taxation" ( Commissioner v. Culbertson,337 U.S. 733, 739 (1949)), rests on the premise that "he who earns income may not avoid taxation through anticipatory arrangements, no matter how clever or subtle * * *." United States v. Basye,410 U.S. at 450; see Lucas v. Earl,281 U.S. 111 (1930). As a corollary to such principle, we stated in Moore v. Commissioner,supra at 1032: "Just as the assignor of income cannot escape taxation by an anticipatory assignment thereof, the transferee of losses can gain no tax advantage by the transfer thereof." In Moore, as well as in Rodman, we held that the assignment of income doctrine, in addition to the varying interest rule contained in section 706(c)(2)(B), prohibited the retroactive allocation of preadmission losses. In Moore, we stated: Landmark was not a member of the partnership when Skyline incurred the loss attributable to January 1, 1972, through December 28, 1972. Landmark was not liable for such loss, and the burden thereof was not retroactively *620 shifted to Landmark by the December 29, 1972, agreement. The entity incurring the loss was Skyline, and any attempt to transfer such loss to persons who were not members of the partnership during such period violates the assignment-of-income doctrine. As stated by the Supreme Court in New Colonial Ice Co. v. Helvering, 292 U.S. at 440-441: the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed. And as the section contains nothing which even approaches such an expression, it must be taken as not intended to make such a departure. The same observations are pertinent in the case now before us. Subchapter K contains no clear expression of the intention to permit a partner to deduct losses which accrued prior to his entry into the partnership. To the contrary, the opposite intent is expressed in section 706(c). [70 T.C. at 1033-1034.] In reaching *621 our conclusion in Moore, we relied on the Second Circuit's decision in Rodman. In Rodman, the taxpayer, on November 5, 1956, purchased his partnership interest from the three existing partners and was allocated a 22 percent interest in partnership profits and losses for 1956. The court held that this retroactive reallocation of partnership profits and losses occasioned by the transfer violated the assignment of income doctrine, stating that the "case is no more than an assignment by Robert and Norman [the existing partners] of a percentage of their interests in the income earned by them as partners prior to Martin's having joined the partnership." [542 F.2d at 857.] [6] See also Richardson v. Commissioner,693 F.2d at 1195; Snell v. United States,680 F.2d at 548; Williams v. United Setates,680 F.2d at 384-385. *622 In the present case, petitioners were admitted to the partnership on December 29, 1972. Pursuant to an agreement executed that day, petitioners would each receive a 20 percent interest in partnership profits for 1972 and all profits and losses thereafter. However, petitioners were each specially allocated 38 percent of the partnership losses for the entire 1972 taxable year although they were only partners for 3 days of that year. There can be no question but that under the Moore and Rodman rationale this retroactive assignment violates the assignment of income doctrine. Petitioners nevertheless argue that the assignment of income doctrine is inapplicable herein since sections 704(a) and 761(c) specifically allow a partnership agreement to be amended during or after the partnership's taxable year to retroactively change the partner's share of partnership income or loss. We cannot agree. While sections 704(a) and 761(c) generally allow partners flexibility in determining inter se the incidents of their tax liability resulting from their participation in a partnership, there are certain well-defined statutory (section 706(c)) and judicial exceptions (assignment of income *623 doctrine) applicable where a new partner is admitted to the partnership during the taxable year. As we stated in Moore:
By the enactment of sections 702(a), 704(a), and 761(c), Congress made clear that with respect to the income and losses resulting from the operation of the partnership, the partners have broad discretion in allocating such items among themselves. See H. Rept. 1337, supra at 65; S. Rept. 1622, supra at 89; Kresser v. Commissioner, 54 T.C. at 1630-1631. Yet,there is nothing in such provisions indicating a congressional intent to extend such discretion to purported retroactive assignments to new partners of partnership items arising prior to their entry into the partnership.[7] [70 T.C. at 1033.] (Emphasis added.) *624 Petitioners next claim that the present case does not involve a true assignment of income where there is an actual shift in who incurs the tax liability. Rather, it involves a difference in the timing of when each taxpayer incurs his liability as a result of the effects of the loss on each partner's basis in the partnership. See section 705(a)(2). These basis adjustments, however, will not necessarily equalize the tax benefits for the exisdting partners and the incoming partners due to the constant fluctuations in our income tax laws and the fact that the tax effect in subsequent years is dependent on the taxpayer's marginal tax rate for those years.In any event, "this case is not to be decided by attentuated subtleties." ( Lucas v. Earl,281 U.S. 111 (1930)). The retroactive allocation of partnership losses already sustained to partners who join a calendar year partnership on December 29 is not to be given effect for tax purposes. Such "loss trafficking" runs afoul of the assignment of income doctrine as well as the clear statutory mandate of section 706(c)(2)(B). See Richardson v. Commissioner,supra; Snell v. United States,supra; *625 Williams v. United States,supra;Rodman v. Commissioner,542 F.2d 845 (2d Cir. 1976); Moore v. Commissioner70 T.C. 1024 (1978)Atlas v. United States,555 F. Supp. 110 (N.D. Ill. 1982). See also Roccaforte v. Commissioner,77 T.C. 263 (1981); Marriott v. Commissioner,73 T.C. 1129 (1980).[8]
Having disallowed the retroactive allocation of losses, we must next decide whether respondent's allocation to petitioners of 3/365 of Castilian's losses for 1972 was proper.
The regulations under section 706(c)(2)(B), unlike those under section 706(c)(2)(A) (sale of entire partnership interest), do not set forth methods for determining the distributive share of partners *626 who are subject to the varying interest rule. [9] In Richardson v. Commissioner,76 T.C. at 525-526, we stated that any reasonable method of allocating such profits and losses for the period prior to and after the admission of new partners is acceptable. See Roccaforte v. Commissioner,supra at 289; Moore v. Commissioner,supra at 1035; see also Marriott v. Commissioner,supra at 1139. In Richardson and Moore, we noted two reasonable methods, both of which correspond to those described in the regulations pertaining to situations falling under section 706(c)(2)(A). See section 1.706-1(c)(2)(ii), Income Tax Regs. First, the distributive share may be computed exactly through an interim closing of the partnership's books on the date of the shifrt in partnership interests. Second, the varying interest of the partners may be estimated by computing partnership income or loss at the end of the year and allocating the year end total ratably over the year. Richardson v. Commissioner,76 T.C. at 525-526; Moore v. Commissioner,supra at 1035. *627 In his statutory notice of deficiency, the Commissioner used the pro rata method. He allocated the partnership's yearend losses to each partner based on the number of days that partner had an investment in the partnership. Since Castilian had a year-end loss of $566,632.50 for 1972, the Commissioner allocated to both Bernard and Archie Meinerz their share of losses for 3/365 of the year ($1,769.76) based on the loss-sharing ratio as provided in the amendment to the partnership agreement. Petitioners have offered no evidence to support a different method of computing the loss or that the method used by the Commissioner was incorrect. See Welch v. Helvering,290 U.S. 111 (1933); Rule *628 142, Tax Court Rules of Practice and Procedure. We therefore sustain the Commissioner's method for computing petitioners' allocable loss for the partnerships' 1972 taxable year. [10]
To reflect concessions, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Thus, determination of both the transferor and transferee's distributive share of partnership items must be made pursuant to sec. 706(c)(2)(A) under guidelines provided by the regulations (sec. 1.706-1(c)(2)). Such determination may not be altered retroactively by a modification of the partnership agreement. Rodman v. Commissioner,542 F.2d 845, 857↩ n. 16 (2d Cir. 1976), affg. on this issue a Memorandum Opinion of this Court.
3. The lack of reduction in the value of the existing partners' interests, as illustrated by petitioners' example, assumes that the partnership interests acquired by the newly admitted partners are equal in value to the amounts invested by them. If the contributions of newly admitted partners are in reality disproportionately small in relation to the interests acquired, the value of the existing partners' interests in the partnership as well as their proportionate share therein may well have been reduced. Thus, as stated in Richardson v. Commissioner,76 T.C. 512, 524-525 (1981), affd. 693 F.2d 1189 (5th Cir. 1982), if we accept petitioners' position that we view a reduction in interest in terms of value, inquiry must be made into the valuation of both the partnership equity and the contribution of the newly admitted partner. We do not think that Congress intended such a result. See Richardson v. Commissioner,76 T.C. at 524-525↩. 4. Indeed, one respected commentator has criticized the reduction in value theory. See 1 Willis, Partnership Taxation, sec. 24.03 (2d ed. 1976) p. 286 ("To say that when the pie is increased enough to offset the reduction in proportionate interest there is no reduction in interest is an unconvincing exercise in subtle semantics.").↩
5. In addition, both the House and Senate Reports, in discussing the 1976 amendment to sec. 706(c)(2)(B)↩, indicate that the varying interest rule is to apply to incoming partners as well as to partners whose interests are reduced. See H. Rept. 94-658, 1976-3 C.B. (Vol. 2) 695, 815-816; S. Rept. 94-938, 1976-3 C.B. (Vol. 3) 49, 134-136.
6. In addition, the Court in Rodman v. Commissioner,542 F.2d 845 (2d Cir. 1976) found that the "attempted assignment in the partnership agreement also falls within § 704(b)(2)'s caveat that a term in a partnership agreement cannot be controlling for tax purposes where its principal purpose is the evasion of taxes." 542 F.2d at 858. See also Snell v. United States,680 F.2d 545, 548 (8th Cir. 1982). Respondent has not relied upon sec. 704(b)(2)↩ in the case before us.
7. Prior to 1976, sec. 704(a) permitted the partners' distributive shares to be determined by agreement "except as otherwise provided in this section". The Tax Reform Act of 1976 changed the quoted phrase to read "except as otherwise provided in this chapter." The amendment was designed to provide that the partnership agreement would be "overridden by any contrary provisions of the partnership provisions (under subchapter K, including section 706(c)(2)(B))." S. Rept. 94-935, 1976-3 C.B. (Vol. 3) 49, 136. In addition, the 1976 Act added sec. 761(e) which contains a cross-reference to sec. 704(b) and sec. 706(c)(2)↩ for rules "in the case of the sale, exchange, liquidation, or reduction of a partner's interest."
8. See and compare congressional responses to other "loss trafficking" and income shifting schemes. Sec. 269 (corporations acquired to evade or avoid income tax); Sec. 382 (limitations on net operating loss carryovers in certain corporate acquisitions); Sec. 482 (reallocation of income among related taxpayers).↩
9. The congressional reports accompanying the 1976 amendments to sec. 706(c)(2)(B) direct that regulations be adopted "to apply the same alternative methods of computing allocations of income and loss to situations falling under section 706(c)(2)(B) as those now applicable to section 706(c)(2)(A)↩ situations (sale or liquidation of an entire interest)." S. Rept. 94-938, 1976-3 C.B. (Vol. 3) 49, 136. See H. Rept. 94-658, 1976-3 C.B. (Vol. 2) 695, 816.
10. The Commissioner evidently overlooked the fact that 1972 was a leap year, or he undoubtedly would have computed petitioners' allocable loss with a fraction of 3/366. See Moore v. Commissioner,70 T.C. 1024, 1036↩ n. 6 (1978).